BEACON TRUST COMPANY *vs.* JOAQUIN K. SOUTHER
& others.

Suffolk.　March 17, 1903. — May 22, 1903.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Corporation.　Agency.*

A note of a corporation was signed in its behalf by its president without authority but in good faith, a ratification being contemplated, and the treasurer of the corporation received the money borrowed on the note.  A vote of ratification covering "all notes heretofore representing such advances" was passed by six directors, of whom three, including the president, the treasurer and the secretary, knew of the transaction.  The books of the corporation showed the receipt of the money and its application in payment of lawful debts of the company.  It did not appear that there were any other notes to which the general words of the vote of ratification quoted above would apply.  *Held,* that there was evidence of ratification of the note by the corporation both by the conduct of its officers and by express vote.

A corporation for the manufacture and sale of ale, porter and lager beer, can borrow money and give its promissory note therefor, when authorized by its directors as required by its by-laws, and it makes no difference if the form of the transaction is such that as to the holder of the note the corporation appears to be an accommodation indorser.

CONTRACT on a promissory note for $15,000 against Joaquin K. Souther, as maker, and the Souther Brewing Company, a corporation, and the members of the firm of J. K. Souther and Sons, as indorsers.   Writ dated May 15, 1900.

At the trial in the Superior Court before *Fessenden*, J., the individual defendants admitted their liability, and the defendant corporation defended only on the ground that the alleged indorsement by it was unauthorized and had not been ratified. At the close of the evidence the defendant corporation requested the judge to direct a verdict for it on this ground.   The judge refused to do so.   He ruled and instructed the jury, that the indorsement was unauthorized and that the defendant corporation was not liable unless the indorsement had been ratified, and submitted the question of ratification to the jury with instructions, which were appropriate if there was any evidence of ratification and to which no exceptions were taken.   The jury returned a verdict for the plaintiff; and the defendant corporation alleged exceptions.

*H. P. Moulton*, for the Souther Brewing Company.

*F. P. Cabot*, (*M. Dolan* with him,) for the plaintiff.

BRALEY, J.   No question of estoppel arises in this case, as the president of the company told the officers of the plaintiff, not only at the time when the original note was discounted but also when the renewal note was given, that he had no authority to indorse either note in the name of the Souther Brewing Company, and as the plaintiff took the note in each instance with notice that the indorsement was unauthorized, the circumstances negative any intention to deceive, and also show that the plaintiff held the note with full knowledge of the infirmity of the alleged contract of indorsement.   *Stiff* v. *Ashton*, 155 Mass. 130, 133, and cases cited.

The by-laws of the company, among other provisions, required that notes and drafts could not be issued or accepted except when authorized by a general or special vote of the board of directors, and as the note declared on was issued within the meaning of the by-law by the president without such a vote, and was taken by the plaintiff with notice of the fact, the indorsement was unauthorized.

A ruling to this effect was made at the trial, and the case was

submitted to the jury, under appropriate instructions, upon the issue whether the contract of indorsement had been ratified; and this raises the only question presented by the exceptions.

It appears that the individual defendants were members of a partnership under the firm name of J. K. Souther and Sons, and they subsequently organized the defendant corporation for the purpose of continuing the business of the firm, which was the manufacture and sale of ale, porter and lager.

The board of directors, seven in number, included the members of the firm, who were the principal owners of the capital stock, and the offices of president, treasurer, and secretary or clerk, were filled by them.

As the company when organized had no working capital, the money necessary to carry on the enterprise was from time to time furnished by the firm, while its active financial management was in the control of the president and treasurer.

Prior to the making of the note, the company was largely indebted to the firm for advances so made, and apparently did not have any money to pay its indebtedness; and the proceeds of the note appear on the books of the company, which in one form or another of bookkeeping show not only the receipt of the money, but the application of it in payment of the lawful debts of the corporation. After these entries had been made and the money so used and applied, and subsequent to the report of the treasurer to the stockholders at the annual meeting, which was accepted, and to the making and filing of the certificate of the financial condition of the company, in each of which the note was included, either under the head of bills payable or of debts owed by the corporation, the directors held a meeting at which six of their number were present, including the president, treasurer and secretary; and a vote was then passed, in substance authorizing the issue of notes in the name of the company, to pay for future loans by the firm to the company, and that "all notes heretofore representing such advances be hereby approved, ratified and confirmed, not to exceed $50,000."

Of the six directors present, at least three knew of the transaction with the plaintiff, and they were the president, treasurer and secretary; and though it does not appear that they com-

municated their knowledge of the matter to the other members, the evidence was amply sufficient to show that the company had received the full equivalent of the loan made really for its benefit, and that the indorsement or making of the note was within the terms and meaning of the vote, and unless some sound legal reason exists why these facts should not have their natural and full probative effect, the verdict for the plaintiff should not be set aside.

In order to establish ratification of the unauthorized acts of an agent, the principal, whether an individual, or a corporation which can act only by its officers and duly appointed agents, must know all the material facts of the original transaction. *Combs* v. *Scott*, 12 Allen, 493.

Here, the books on which appeared the business dealings of the company fully disclosed the receipt of the amount of the note and the application of the money, and there must be read into the financial record the facts that in the course of business ready money was being advanced from time to time by the firm to whom the company was in debt and that it had no funds in its treasury immediately available with which to make payment.

But the receipt and application of the money is not the only fact of which the directors in the absence of fraud may well be found to have had notice. At least three members of the directorate and principal officers of the company directly knew of the whole transaction.

This was the actual condition of affairs when the directors passed the vote under which the plaintiff claims the adoption by them of the act of the president. All that had been done was for the manifest benefit of the company, and to enable it to carry on business, and from this fact may be presumed to have been accepted; and any acts on the part of the board of directors which can be reasonably accounted for only on the ground that it was their intention and purpose to confirm the indorsement or making of the note as one of the ways by which money had been raised are evidence tending to support such presumption. *Dedham Bank* v. *Chickering*, 3 Pick. 335, 339. *Melledge* v. *Boston Iron Co.* 5 Cush. 158, 175. *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, 70.

It is not contended that the act of the president was fraudulent or that he used the indorsement of the company wrongfully to obtain its credit for his personal advantage, nor that the conduct of the treasurer and secretary was dishonest so far as they knew of or were connected with the matter in the management of the general business of the corporation ; and in the absence of such misappropriation of the funds or credit of the company by its officers, the fact that the president did an unauthorized act under the by-laws when he indorsed the note, and that the treasurer and secretary, though fully informed of the fact, apparently did not disclose it to the other three members of the board, does not cut down or destroy what otherwise would be held constructive notice to the corporation of the subsequent use of the proceeds of the note. *Innerarity* v. *Merchants' National Bank,* 139 Mass. 332, 333. *Allen* v. *South Boston Railroad,* 150 Mass. 200, 206.

The president and treasurer were the officers who had charge of the company's business, and had acted, one, in getting the note discounted, both, in using the money so obtained for legitimate purposes, and their interests and conduct do not appear to have been in any way adverse to it. The corporation would be affected by their knowledge, and should be held to have had at least constructive notice of what had been done. *National Security Bank* v. *Cushman,* 121 Mass. 490. *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 180, 182.

From all the circumstances it cannot be said as matter of law that a jury would not be justified in finding that they were sufficient to show acquiescence. *Murray* v. *Nelson Lumber Co.* 143 Mass. 250, 252.

But while the case might well rest on the ground of ratification, implied from the conduct of its officers and its usual course of business, there was evidence of express confirmation by the corporation. When the vote was passed it does not appear that there were any notes, other than the one in suit, to which the last clause would apply, and the directors must be held as between the parties to have acted with a full knowledge of the subject matter on which they were voting.

The acts of the president and treasurer in receiving advances from the firm for use in the carrying on of the company's enter-

prise and in the giving of its notes in any form for that purpose, were under consideration, and it became their duty to ascertain before taking action what had been done by the officers to whom the general management of affairs had been intrusted.  If they preferred to go forward and to act without such information, they cannot escape one of two conclusions, either that they did know, or, choosing to proceed without the facts, their conduct is equivalent to knowledge.  *Dole Brothers Co.* v. *Cosmopolitan Preserving Co.* 167 Mass. 481, 483.

The vote passed must therefore be taken to be the adoption by the company of the act of its president, which purported on its face to be the indorsement of the ratifier, and was equivalent to an original authorization to him to sign the note in the name of the company.  *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 382.    *Dempsey* v. *Chambers,* 154 Mass. 330, 332.

The argument of *ultra vires* in whatever form is unavailing as a defence.  In the carrying on of its business the company could contract debts and hire money, and might pay one and raise the other by its promissory notes, when such notes were authorized by the board of directors as required by the by-law; and it would make no difference if, in so doing, the form of the transaction was such that as to the holder of its paper for money loaned, the company appeared to be an accommodation indorser.  *Usher* v. *Raymond Skate Co.* 163 Mass. 14.    *Kneeland* v. *Braintree Street Railway,* 167 Mass. 161.

*Exceptions overruled.*