### In re PROSPECT WORSTED MILLS.

#### Ex parte STODDARD et al.

#### (District Court, D. Massachusetts. January 2, 1904.)

#### No. 3,941.

1. CORPORATIONS—PLEDGE OF CREDIT—DIRECTORS.

The treasurer and directors of a corporation have no authority to pledge the corporation's credit for the price of goods sold to another corporation.

2. SAME — INDORSEMENT OF PAPER—WANT OF CONSIDERATION—INDORSEES—
KNOWLEDGE.

Where a corporation indorsed a note given by another corporation by an indorsement which ordinarily implied a consideration, but no value

---

¶ 2. See Corporations, vol. 12, Cent. Dig. § 1831.

was in fact given, and the indorsee had knowledge of such fact, the indorsing corporation was not liable thereon.

**3. SAME—RATIFICATION.**

Where the wife and daughters of the president of a corporation held stock therein, the consent of such female stockholders to an accommodation indorsement by the corporation of commercial paper given for materials sold to another corporation could not be inferred from the acts of the president and his sons, who conducted the active management of the corporation.

**4. SAME—GUARANTY—RIGHTS OF CREDITORS.**

Where a corporation, by the unanimous consent of its stockholders, guarantied the debt of another corporation for material furnished, the obligation created thereby was subject to the claims of the guarantying corporation's creditors.

In Bankruptcy.

Storey, Thorndike, Thayer & Palmer, for creditors.

Knox, Coulson & Currier, for trustees.

LOWELL, District Judge. The claim of Stoddard, Haserick, Richards & Co., hereinafter called Stoddard, was offered for proof and allowed. The claim was based on several notes made by the Globe Mills payable to the order of the Prospect Mills, and by the latter indorsed to Stoddard. The trustee petitioned that the proof be expunged.

These two mills, incorporated in Massachusetts, and now both in bankruptcy, were owned by Samuel Robinson and his family. He was president, treasurer, and active manager of the Prospect Mills. He was president of the Globe Mills, of which his son Herbert was treasurer. Samuel, Herbert, and Benjamin formed the board of directors of each mill, and owned all the stock therein, except 200 shares in the Prospect Mills owned by the wife and daughters of Samuel, and one share in the Globe Mills owned by the bookkeeper. Both mills spun woolen yarn. That spun by the Prospect Mills was finer than that spun by the Globe Mills, and required finer wool. One Janes sold wool to both mills, and Stoddard was his banker, taking title to the wool when bought by Janes, and when sold by Janes conveying title thereto to the purchaser, receiving payment from the latter.

The credit of the Prospect Mills was better than that of the Globe Mills. Distrusting the latter, Janes and Stoddard obtained on the notes given by the Globe Mills for the purchase of the wool it used, first the accommodation indorsement of Samuel Robinson, and later that of the Prospect Mills, the latter being what is known as an anomalous indorsement. As a rise in price was expected, the Globe Mills desired to increase largely its purchases of wool. Janes and Stoddard were unwilling to sell to the Globe Mills without the security of the Prospect Mills, and they feared that an anomalous indorsement for accommodation would not bind the Prospect Mills. They proposed, therefore, that the wool should be bought directly by the Prospect Mills. Accordingly, the wool was billed to the Prospect Mills, sent to the Globe Mills, and paid for as above stated. Stoddard contends and the trustee denies that, as the result of these transactions, the Prospect Mills became indebted to Stoddard as indorser. The trustee

contends that, in substance, the transaction remained an indorsement by the Prospect Mills for the accommodation of the Globe Mills. On the other hand, Stoddard contends that the goods were actually sold to the Prospect Mills, which became indebted for them, and remained indebted until the indebtedness for goods sold and delivered was merged in the notes offered for proof.

In the argument the question was treated as one of form, rather than one of substance. The court was asked to decide whether there was a purchase by the Prospect Mills or an accommodation indorsement of the note of the Globe Mills. Not infrequently the court must consider the form of a transaction. A contract otherwise legal may fail to bind the parties because a necessary form has not been observed, but a contract illegal in its nature does not become binding as between parties who know the facts, whatever be the form adopted.

The substance of this transaction, as understood by all parties, was a pledge of the credit of the Prospect Mills for the price of wool used by the Globe Mills. That was the purpose of the agreement of 1896, and the only reason for changing the old course of dealing. The court must first consider if the Prospect Mills could pledge its credit for this purpose. If it could, then the sufficiency of the form used must be examined; but, if the Prospect Mills could not pledge its credit for the purpose stated, the form employed is immaterial. The court will not uphold a transaction illegal in substance because its form is unobjectionable. It was urged that Stoddard did not know what passed between the Globe and the Prospect Mills, and that he may have supposed that some consideration moved from the former to the latter. There is no evidence that he supposed anything so unlikely, and it is hard to imagine what consideration could reasonably have been supposed which would affect the matter. The presumption that all due formalities have been complied with is not the presumption that something extraordinary has happened to validate a transaction otherwise invalid.

Can one manufacturing corporation pledge its credit for the price of goods sold to another? That the treasurer and directors of the corporation, either or both, have authority to do this, was not contended, and is out of the question. As has been said, the issue concerns form, and not substance. An indorsement given for full value will bind the corporation, though the form is that of an accommodation indorsement, and this is within the knowledge of the parties. Beacon Trust Co. v. Souther, 183 Mass. 413, 67 N. E. 345. On the other hand, an indorsement which ordinarily implies value will not bind a corporation to an indorsee who has knowledge of the facts, provided no value is really given.

It was urged, however, that the stockholders of the Prospect Mills ratified the action of its treasurer. No formal ratification was shown, and such ratification by a mere majority would be ineffectual. It was urged that the ratification was unanimous by implication, but the assent of Mrs. Samuel Robinson and her two daughters was not shown and cannot be implied. In the present state of the law of married women there is no presumption that the knowledge of a man is the knowledge of his wife as the owner of stock in a corporation, and at

no recent period of history has there been any presumption that in this respect a father represents his grown-up daughters, or a brother his sisters. Even if express ratification by all the stockholders could be shown, still it seems that Stoddard cannot prevail in this case. Though it be admitted, as some authorities assert, that, by unanimous consent of its stockholders, a manufacturing corporation can bind itself, without consideration, by a guaranty of the debt of another, yet the obligation created is subject to the claims of creditors. This is expressly recognized in cases cited by counsel for Stoddard. Murphy v. Arkansas Co. (C. C.) 97 Fed. 723; Martin v. Niagara Falls Co., 122 N. Y. 165, 25 N. E. 303. See Cook on Corporations (5th Ed.) §§ 3, 774. The rights of creditors, even where all stockholders had assented, were recognized in National Trust Co. v. Miller, 6 Stew. (N. J.) 155, and the general principle is thus stated in Morawetz on Corporations (2d. Ed.) § 992:

"A corporation cannot indirectly deprive its creditors of the security to which they are justly entitled by executing certificates of indebtedness or a mortgage on its property to persons from whom it has not received a valuable consideration in return. The holders of the securities so issued would not be entitled to share with the bona fide creditors in 'a distribution of the company's assets, even although their claims be valid as against the corporation by reason of the unanimous consent of its shareholders. They would only be entitled to payment out of a surplus remaining after the bona fide creditors have been paid."

See, also, Germania Co. v. Boynton, 71 Fed. 797, 19 C. C. A. 118; Tod v. Kentucky Land Co. (C. C.) 57 Fed. 47, 51.

Judgment of the referee affirmed.