NORTH ANSON LUMBER COMPANY *vs.* HERBERT L. SMITH, administrator.

Middlesex.    December 6, 1910. — June 21, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Corporation,* Powers, By-laws.    *Bills and Notes,* Indorsement, Payment.    *Contract,* Implied in fact, Validity.    *Evidence,* Circumstantial, Presumptions and burden of proof.

A business corporation has power to agree to reimburse the maker of a note which he is to sign for its benefit.

A business corporation may be bound by a contract, which can be inferred from its corporate acts and other facts without any direct evidence of the existence or terms of the contract.

In an action by a corporation against an administrator, on certain promissory notes made by the defendant's intestate, it appeared that the intestate at the time he signed the notes was the president and a stockholder of the plaintiff, that the notes were payable to the owner of certain property which was received and used by the plaintiff and not by the defendant's intestate, who received no consideration for the notes unless it was an agreement of the plaintiff to hold him harmless from liability upon them, that the notes after maturity were indorsed in blank without recourse and were delivered to the plaintiff, whereupon the plaintiff, which was not a party to them and had not guaranteed their payment, paid the notes and entered the transaction on its books as "notes paid." *Held*, that from the evidence a contract of the plaintiff with the intestate to assume the payment of the notes could be inferred, that the conduct of the plaintiff through its officers was susceptible of the construction that the plaintiff in paying the notes was paying its own debt, which thereby became extinguished, and that the indorsement was a mere form which did not transfer an outstanding obligation, so that the case was for the jury and a verdict properly could not be ordered for the plaintiff.

The fact, that a corporation has a by-law to the effect that no agreements involving the payment of a certain amount of money shall be valid without a vote of the board of directors, does not prevent the corporation from being held liable on a contract to pay a larger amount of money than that named in the by-law which, by inference from corporate acts, may be shown to have been made, and which may be presumed to have been made under adequate authority.

RUGG, J.    This is an action to recover one half the principal and interest of eight promissory notes made by the defendant's intestate jointly with James E. Freeman and Charles T. Leavitt and payable to the order of Emery Porter and Company. At or after maturity they were indorsed in blank without recourse and delivered to the plaintiff.

The circumstances of the transaction appear not to have been much in dispute, and might have been found to be these: Emery Porter and Company owned a saw mill in North Anson, Maine, in 1905, and substantially all the capital stock of the North Anson Water Power and Improvement Company, a corporation authorized to develop and dispose of water power, together with a large quantity of logs and timber. As a result of several agreements, Freeman, Smith and Leavitt purchased the timber and logs, and took a bond for a conveyance of the mill property and stock in the water power company, entered into possession of all the real and personal property, and started to carry on the business of sawing and selling lumber. They decided to form a corporation to be called the North Anson Lumber Company. Notes of the proposed corporation were proffered in part payment of the real and personal property, but these were refused

by the sellers, who insisted upon notes signed by the individual purchasers. In payment for the property and for starting the business, Freeman and the defendant's intestate each advanced $6,000, and signed the eight notes here in suit. On April 10, 1905, the plaintiff corporation was organized by Freeman, Smith and Leavitt, who had previously to that time conducted the business under that name. Leavitt, although participating in the organization, went no further in the enterprise, furnished no money, and drops out of the case. Upon its incorporation the North Anson Lumber Company took over the business, previously conducted by Freeman, Smith and Leavitt, as a going concern, and substantially all the property bought by them of Emery Porter and Company, but no change whatever was made in the way it was carried on. There was no formal offer of sale by Freeman, Smith and Leavitt, or acceptance by the corporation, or transfer of title to property, but the corporation simply took possession of and used in its own business from that time on all the property purchased. The logs were sawed into lumber and sold by the plaintiff in ordinary course of trade, and the proceeds all went into its treasury. The books originally opened by Freeman, Smith and Leavitt were continued without change or interruption by the plaintiff corporation, and no distinction was made as to the business conducted before and after the date of the incorporation. The corporation entered into possession of the real estate described in the bond. The defendant's intestate was the first president of the company, but after a few months his mind failed, and a conservator was appointed who cared for his estate until his death. Freeman has always been the treasurer of the plaintiff, and, after the incapacity of the defendant's intestate, became also its president, and has been exclusively in charge of its affairs as general manager. After the incorporation, certificates of stock were issued to Freeman and to the defendant's intestate for one hundred and twenty-five shares each, although up to that time each had contributed only $6,000. In January, 1906, Freeman, in whose custody the Smith certificate had been placed, multilated it and issued a new one for sixty shares, which corresponded at par with the cash he had paid in, making an entry upon the stub in the stock book that "the balance sixty-five shares were never

paid for." Six of the eight notes now in suit were paid on or about their maturity by the plaintiff with its own money, and were at Freeman's request surrendered to him after being indorsed without recourse by the payees. It was contended by the plaintiff that Freeman had paid one half these notes, and it seeks to recover from the defendant only the remaining half, this being based upon the testimony of Freeman that he and the defendant's intestate had an understanding that each was to pay one half the notes and take stock in the corporation to an equal amount. Freeman, however, did not testify that he paid the notes or one half of them with his own money, but that he had paid money into the treasury of the plaintiff as he was able and had taken stock for it. He was unable to point however to any specific payments to this end or to any entries upon the books of the plaintiff of money paid to it for the purpose of meeting these notes, or which corresponded to the date of the payments. The entries upon the books of the corporation show that all the notes, except the two given for the real estate and Water Power Company stock, were paid with moneys of the corporation and entered on its note account as "notes paid." These two notes were not paid at maturity, but the sellers of the real estate, who held the notes, did not press for payment, and after the lapse of a year or more made a conveyance to the plaintiff of the real estate, and assigned to it the Water Power Company stock, in return for which the plaintiff, consolidating the amount of these notes with the other indebtedness not connected with this action, owed by it to Emery Porter and Company, gave that firm its own new notes secured by mortgage bonds upon its real estate. This conveyance, although not a compliance with the bond given by Emery Porter and Company to Freeman, Smith and Leavitt, was in conformity to it as to price, and allowed credit for the cash originally contributed by Freeman and Smith, and thereby Emery Porter and Company incapacitated themselves from carrying out the terms of the agreement with the original contractors. No demand was made upon the defendant's intestate or his conservator or administrator for the payment of any part of any of these notes until a short time before this action was brought. On two occasions, when there would have been strong ground to expect Freeman

to speak of the liability of the defendant's intestate on the notes if it had existed, he said nothing about it, and in one or two letters written to the defendant, Freeman requested him to raise some money for the plaintiff for the sake of protecting his existing interest as stockholder, without referring to any indebtedness. At the conclusion of the evidence in the Superior Court the jury were directed * to return a verdict for the plaintiff.

We are of opinion that this was error. The plaintiff could not recover if it had recognized and adopted the notes as its own obligations and had agreed to hold the defendant harmless thereon, and was not in truth a holder of them for value. This is not a case where one undertakes to recover of a corporation upon a contract fully made with some one else before the existence of the corporation for its benefit, and never afterwards assumed by it in such a way as to indicate a new contractual element arising after the incorporation. Hence the principle followed in cases like *Koppel* v. *Massachusetts Brick Co.* 192 Mass. 223, *Penn Match Co.* v. *Hapgood*, 141 Mass. 145, *Abbott* v. *Hapgood*, 150 Mass. 248, 252, *Pennell* v. *Lathrop*, 191 Mass. 357, and *Whiting & Sons Co.* v. *Barton*, 204 Mass. 169, is not controlling.

But this is a case where the defense is set up that the plaintiff corporation, after its organization, which was subsequent to the initial transaction, entered into such relations with the makers of the notes that a contract to assume the payment of their notes may be implied, and that other circumstances warrant the further inference that this implied contract has been executed. These relations are the receipt by the plaintiff of valuable property and business from the makers of the notes, for which no adequate consideration was paid, unless there was an agreement to hold the makers harmless on these notes. No claim has been or could be put forward successfully that a contract of this nature was beyond the power of the plaintiff. The property thus received was that which it needed to do business. The only question is whether there was evidence to support a finding that such a contract was made. A business corporation may be bound by inferences from facts and corpo-

---

* By *Pierce*, J.

rate acts, which point to the existence of an implied agreement as their rational explanation, as well as by a formal vote. In this respect it does not differ from a natural person. By accepting all the benefits of a negotiation made in its behalf and by taking advantage of arrangements which are in its interest, an implication of adoption of the incidental burdens may arise against a corporation. Failure to repudiate after knowledge may signify corporate approval or ratification. *Proprietors of Canal Bridge* v. *Gordon,* 1 Pick. 296. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413. *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177. The circumstances upon which such a conclusion may be founded in the case at bar are that the plaintiff received without other consideration than such an agreement the proportional part of its original stock in trade and plant (which was by far the larger part) represented by the purchasing power of these notes, and that it paid all the notes at or after maturity, by its own checks or notes, although it was not a party to them and had in no way guaranteed their payment, and entered the transactions upon its books as " notes paid." Confirmation of this inference may be found in the fact that although stock in the plaintiff at par was issued to Freeman and Smith for the cash paid by them toward the purchase price of the property with which the plaintiff began business, no stock was issued to them for the amount of the notes. Moreover no stock of the plaintiff was reserved to be used for the purpose of being issued to the defendant, the entire capital stock having been issued. The conduct of the plaintiff and its officers as to the notes is also susceptible of the construction that it was merely paying that which was in substance, as between it and the defendant, its own debt, and which thereby became extinguished, and that the indorsement was a mere form and not a transfer of an outstanding obligation.

The by-law of the plaintiff, to the effect that no agreement involving so large an amount of money should be valid without vote of the board of directors, does not prevent the establishment of a contract by inference from corporate acts, which may be presumed to have been performed under appropriate authority. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 582.

In view of all the evidence it could not properly have been

ruled as matter of law that the only rational conclusion from it possible was that the plaintiff was entitled to recover.

*Exceptions sustained.*

*W. W. Stover,* (*W. P. Lombard* with him,) for the defendant.
*C. F. Choate, Jr.,* (*J. H. Stone* with him,) for the plaintiff.