CHAUNCEY H. SEARS *vs.* CORR MANUFACTURING COMPANY.

Bristol. March 29, 30, 1922. — July 5, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Contract,* Implied. *Evidence,* Presumptions and burden of proof. *Agency,* Scope of authority, Ratification. *Corporation,* Officers and agents.

At the trial of an action against a Massachusetts corporation by one of its directors and stockholders for the value of his services in assisting to finance the corporation, the jury found that in 1915 the treasurer of the defendant agreed with the plaintiff that if the latter would assist the defendant, either by loans of money,

by collateral, or by indorsements of notes, the defendant would pay him and further found that the value of services rendered was $5,000. The judge ruled as a matter of law that the treasurer had no authority to bind the defendant by the agreement and ordered a verdict for the defendant. There was no evidence as to the authority of the treasurer except the by-laws, which provided that the "board of directors shall have the superintendence and control of all the business and concerns of the corporation" and that "subject to the control and direction of the board of directors" the treasurer shall "generally attend to all its financial concerns," and make "notes and drafts, in behalf of the corporation, so far as authorized and under such limitations as may be imposed by the board of directors," and a vote of the board of directors which authorized him "to negotiate loans and issue notes of the corporation in such amounts as is necessary to successfully conduct the business of the corporation, and all of such notes to be countersigned by either the president of the corporation or one of the board of directors and by the bookkeeper of the corporation" and ratified the action of the treasurer in negotiating certain loans and issuing notes for the amount thereof. There was evidence that the plaintiff had been a director of the defendant and stockholder for about twenty years and that previous to 1915 he and also the president and treasurer of the defendant had indorsed many of its notes and had not been paid for doing so and there was no evidence of a custom or usage of the defendant or other business corporations to pay its officers for such services. There also was evidence that the money secured under the agreement between the plaintiff and the treasurer was received and used by the defendant for its own proper purposes and that the indebtedness created thereby had always been paid by it, but there was no evidence that the officers of the corporation other than the treasurer knew or had notice of the agreement between the plaintiff and the treasurer. *Held*, that

(1) There was no implication of contract arising from the fact that the plaintiff lent his property and credit or because his services were valuable;

(2) No presumption arose that the assistance was rendered for reward as it was not of the character usually and commonly the subject of hire;

(3) The plaintiff's long official connection with the defendant as a director charged him with knowledge of the limits of the treasurer's actual authority;

(4) The power expressly given the treasurer to negotiate loans and issue notes in such amounts as were necessary successfully to conduct the business of the corporation entitled him to use only the usual and appropriate means to accomplish that result;

(5) In the execution of the power conferred upon the treasurer — at least as between one of the directors and the corporation — he could not employ extraordinary and unusual means without special authority, or without proof of some relations other than those ordinarily existing between a corporation and its directors;

(6) The defendant's treasurer, acting in its behalf, had no implied authority to contract with one of its directors to pay him for the loan of collateral or for becoming an accommodation party on its commercial paper, all of which was reasonably necessary to facilitate and accomplish the sale or discount of such obligations;

(7) The receipt of the moneys and their actual application to the proper business activities of the defendant did not constitute knowledge or notice that the money had been obtained by an unusual or extraordinary contract col-

lateral to those in which the moneys were received and did not constitute ratification of that agreement;

(8) The verdict for the defendant was ordered rightly.

CONTRACT to recover the value of services rendered in assisting the defendant to raise money for its use. Writ dated December 23, 1919.

In the Superior Court, the action was tried before *Bishop*, J. Material evidence and questions to and answers by the jury are described in the opinion. Upon motion by the defendant, the judge ruled as a matter of law that the treasurer of the defendant corporation had no authority to bind the defendant by the agreement in question, ordered a verdict for the defendant, and reported the case to this court; if the ruling and order were correct, judgment was to be entered for the defendant; if incorrect, judgment was to be entered for the plaintiff in the sum of $5,000 with interest from October 20, 1918, or from the date of the writ, whichever this court might determine.

*Lee M. Friedman,* for the plaintiff.

*R. G. Dodge,* (*G. C. Scott* with him,) for the defendant.

JENNEY, J. This is an action of contract brought to recover the value of services rendered in assisting the defendant to raise money for its use and benefit. The following issue was submitted to the jury: "Was there an agreement made on or about May 14, 1915, between Mr. Skinner [treasurer of the defendant] and Mr. Sears [the plaintiff] to the effect that if Mr. Sears would assist the corporation either by loans of money, or collateral, or by endorsements of notes, the corporation would pay him?" This was answered in the affirmative; in response to another question, the value of the services actually rendered was fixed at $5,000.

The judge ruled as a matter of law that the treasurer had no authority to bind the defendant by the agreement and, subject to the plaintiff's exception, ordered a verdict for it. The question is whether this ruling was right.

The defendant is organized under the general corporation law of this Commonwealth with its place of business in East Taunton and is engaged in buying raw material, including cotton, and manufacturing and selling cotton products. Being under-capitalized, the corporation had been financed largely by considerable borrowings of money from banks and individuals, and sometimes by sell-

ing its commercial paper through note brokers. For four years before 1915, it operated at a substantial loss, but a small profit had been made in the last three months of 1915, and "increasing profits" in the three following years.

The evidence was sufficient to justify a finding that the defendant was in poor credit and that the plaintiff's indorsements were of substantial value in obtaining much needed money. The financial affairs were under the management of the treasurer, A. Homer Skinner, who was also a director; in part his duties were to raise money for the use of the corporation.

The directors of the corporation met quarterly. There was no evidence of any by-laws or votes as to the authority of the treasurer except that the former provided that the "board of directors shall have the superintendence and control of all the business and concerns of the corporation. . . . They may appoint and remove at pleasure agents and other employees and define their duties and powers, and fix their compensation, as well as the compensation of the officers of the corporation." As to the treasurer, the by-laws provided that he should, "subject to the control and direction of the board of directors . . . collect and receive and keep all moneys, funds and securities of the corporation, and . . . generally attend to all its financial concerns;" that he might make "notes and drafts, in behalf of the corporation, so far as authorized and under such limitations as may be imposed by the board of directors." The board of directors, after Skinner had been elected treasurer, voted as follows: "The Treasurer of the corporation is hereby given authority to negotiate loans and issue the notes of the corporation in such amounts as is necessary to successfully conduct the business of the corporation, and all of such notes to be countersigned by either the president of the corporation or one of the board of directors and by the bookkeeper of the corporation." "The action of the treasurer in negotiating loans for the benefit of the corporation to the amount of $343,359.76 and the issuing of the notes of the corporation for the same amount is hereby ratified and approved."

The plaintiff, who was a large stockholder, had been a director from the organization of the company until some time in 1919. On various occasions, beginning in 1915 about the time when Skinner was elected treasurer, he had loaned money to the corpo-

ration upon its notes indorsed by the treasurer, and also had permitted it to use his securities as collateral. He also became a party to its commercial paper as joint maker, guarantor and indorser to upwards of $250,000 and continued to do this until well into 1917. The money secured upon these obligations was received and used by the defendant for its own proper purposes, and the indebtedness created thereby had always been paid by it.

The evidence disclosed that the plaintiff, prior to the time of the treasurer's agreement to pay him for so doing, had indorsed many corporate notes and that the president and treasurer had likewise become indorsers to large amounts and had not been paid for so doing.

No custom or usage appeared under which the officers of this or other business corporations received payment for like services; and there was evidence that the defendant's officers had never been paid for the use of their names as accommodation parties.

There was no evidence that the officers of the corporation, other than the treasurer, knew or had notice of the agreement under which the plaintiff claims; indeed, the plaintiff testified that he said nothing about being recompensed until the year after his agreement with the treasurer. In July, 1918, he demanded payment, and in October of that year presented a bill to the corporation.

There was no implication of contract because the plaintiff lent his property and credit or because his services were valuable. Neither did any presumption arise therefrom that the assistance was rendered for reward as it was not of the character usually and commonly the subject of hire. *Sawyer* v. *Pawners' Bank,* 6 Allen, 207. *Pew* v. *Gloucester National Bank,* 130 Mass. 391. *Parker* v. *Nickerson,* 137 Mass. 487, 496. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, 517. *Marcy* v. *Shelburne Falls & Colrain Street Railway,* 210 Mass. 197. *Apsey* v. *Chattel Loan Co.* 216 Mass. 364. No special facts are shown pointing to the existence of an implied agreement as a rational explanation of the plaintiff's course. See *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333.

The plaintiff's long official connection with the defendant as one of its directors charged him with knowledge of the limits of the treasurer's actual authority. For this reason, no question is

involved as to the extent of his ostensible authority. See *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505, 507.

The power expressly given the treasurer to negotiate loans and issue notes in such amounts as were necessary successfully to conduct the business entitled him to use only the usual and appropriate means to accomplish that result. *Valentine* v. *Piper*, 22 Pick. 85. *Sprague* v. *Gillett*, 9 Met. 91. But in its execution — at least as between one of the directors and the corporation — he could not employ extraordinary and unusual means without special authority, or without proof of some relations other than those ordinarily existing between a corporation and its directors. *Shaw* v. *Stone*, 1 Cush. 228. See *Upton* v. *Suffolk County Mills*, 11 Cush. 586, 589; *Mahone* v. *Manchester & Lawrence Railroad*, 111 Mass. 72; *Henry Wood's Sons Co.* v. *Schaefer*, 173 Mass. 443; *Rennie* v. *Mutual Life Ins. Co. of New York*, 176 Fed. Rep. 202.

In its ultimate analysis, the main question is whether the defendant's treasurer, acting in its behalf, had implied authority to contract with one of its directors to pay him for the loan of collateral and for becoming an accommodation party to its commercial paper, all of which was reasonably necessary to facilitate and accomplish the sale or discount of such obligations. Plainly no such authority was implied. Indisputably the officers of the corporation customarily had rendered like aid without compensation. Moreover, the plaintiff's official position negatived any presumption that he was entitled to payment therefor, or that the services were such as were ordinarily rendered for hire. In the circumstances disclosed, such a contract was not fairly and reasonably incident to the duties of the office. The provisions of the by-laws directing the treasurer to attend to all financial concerns did not broaden his authority. Neither did the express vote as to the negotiation of loans and issuing of notes aid the plaintiff. On this record, the contract was not a usual and appropriate means to effectuate his authority.

The plaintiff contends that he can get on because of the receipt of the moneys, and because their actual application to the proper business activities of the defendant constituted ratification, or at least could have been found to have that effect. But even if it can be so construed, such receipt and use, in any event, cannot have that result unless it appears that the corporation then had

knowledge of all material facts. Such receipt and use did not constitute knowledge or notice that the money had been obtained by an unusual or extraordinary contract collateral to those in which the moneys were received. *Combs* v. *Scott,* 12 Allen, 493. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413. Compare *Dempsey* v. *Chambers,* 154 Mass. 330, where a ratification without knowledge of a wrongful act incidental to the conduct ratified was held to include liability for the wrong. In the case at bar, all that appears is that the defendant has received the benefit of the things done without knowing that its treasurer had resorted to an independent and unauthorized obligation with a third person to aid in its procurement. See also *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177.

The verdict for the defendant was rightly ordered, and in accordance with the report judgment is to be entered for the defendant.

*So ordered.*