## In re BOSTON CONFECTIONERY CO.

(District Court, D. Massachusetts. August 18, 1922.)

### No. 29110.

1. **Money lent** ⬅⟶2—**No implied obligation of one for whose accommodation bank loans on notes of others to it.**

Where the transaction was fully covered by an express contract, no obligation of a corporation to repay a bank money which it, at request of the corporation, loaned on notes given the bank by third persons for the corporation's accommodation, can be implied, especially where the transaction was because of the bank having already loaned the corporation all that the law allowed.

2. **Bills and notes** ⬅⟶92(5)—**Corporations** ⬅⟶464—**Notes as security for accommodation notes neither ultra vires nor without consideration.**

Notes given by a corporation to a bank on bank's demand for additional collateral for notes of like amounts previously given the bank by third persons for the corporation's accommodation, whereby forbearance to press collection of the accommodation notes was obtained, are neither ultra vires nor without consideration.

3. **Corporations** ⬅⟶464—**Formal vote of directors pursuant to by-law authorizing or ratifying notes not necessary for liability.**

Where a corporation gives to a bank its notes as collateral for notes of third persons made at request of and for benefit of the corporation, and its notes are held and relied on by the bank with knowledge and approval of all but one of corporation's directors, and without objection by any, the corporation is liable thereon, though no formal unanimous vote of the directors authorizing or ratifying them was ever passed as required by its by-laws.

In Bankruptcy. In the matter of the Boston Confectionery Company, bankrupt. On review of the referee's disallowance of claims. Claimant allowed to prove on direct notes.

Sydney R. Wrightington, of Boston, Mass., for trustee in bankruptcy.

Garald K. Richardson, of Boston, Mass., for claimant.

MORTON, District Judge. The somewhat complicated facts are stated in the certificate of the learned referee. Those essential to the discussion of the points in controversy are as follows:

The confectionery company had borrowed from the Charles River Trust Company the full amount which it could legally loan to one person. See Gen. Laws Mass. c. 172, § 40; chapter 167, § 5. The president of the trust company was a director of the confectionery company. It was arranged between him and Simes, president of the confectionery company, that the trust company would loan approximately $40,000 more by discounting notes made by employees of the bankrupt secured by shares of its capital stock as collateral, which at that time was worth more than par. Accordingly three such notes were made to the trust company and were discounted by it. The proceeds of the notes were credited to the bankrupt, and the interest on the loans was paid by it. The notes were purely accommodation paper; the makers had no interest in the transaction beyond lending their names to the

⬅⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bankrupt. This was known, of course, to the bankrupt, and to the president of the trust company, who acted for it in the transaction. When the accommodation notes came up for renewal, the bankrupt made partial payments on the principal, and gave renewal notes of the accommodation makers.

As part of the original transaction, the bankrupt made three notes of like amounts, payable to the accommodation makers, whose credit, nominally, at least, it was using. These notes were properly signed and countersigned and given into the hands of the president of the bankrupt. It is not contended that any further delivery of them was made. They have been referred to as the "covering notes."

While the accommodation notes were outstanding in the trust company's hands in the fall of 1920, the bankrupt gave its own demand notes for like amounts to the trust company at the latter's request as additional collateral on the accommodation notes, and without any further consideration. The payments of principal were noted by the trust company on the accommodation notes; no entries concerning such payments appear on the direct notes of the bankrupt to the trust company last referred to.

Simes was one of the accommodation makers. He received $2,400 cash from the bankrupt, which was to be applied on the indebtedness to the trust company; but he retained the money himself.

The principal questions are: (1) Whether the trust company (through Mr. Richardson) may prove on the notes made direct to it by the bankrupt, it being urged against the proof that these notes were ultra vires, without consideration, and not made in accordance with the bankrupt's by-laws; and (2) whether the trust company may prove against the bankrupt on the original loan for which the accommodation notes were given. The entire proof was, as to the claims under discussion, disallowed by the learned referee.

[1] As to the last point: The original transaction was, in legal effect, between the trust company and the accommodation makers. The agreement under which the money was loaned is contained in the notes. There was no collateral agreement, either oral or written, obligating the bankrupt, directly or as surety.

"It is true that at this stage of the transaction there was no direct promise by the bankrupt to repay to the trust company the sums advanced to the bankrupt on the individuals' notes." Claimant's brief.

It is contended for the trust company that there was an implied obligation on the part of the bankrupt to repay the money loaned on the accommodation notes, because it was the person to be benefited. But where transactions are fully covered by express contracts, as these were, there is no occasion and no room for a contract implied by law. That the loans on the accommodation notes were made at the request of the bankrupt and for its advantage did not create an obligation on it to pay them to the lender, especially as the purpose of the transaction was to avoid creating such a liability, and there is no evidence of any intention to do so. I agree with the learned referee that no provable claim by the trust company against the bankrupt arose out of those transactions

[2] As to the first point above referred to: The bankrupt was interested in the accommodation loans because of its obligation to indemnify the makers of those notes. See Cornwall v. Gould, 4 Pick. (Mass.) 444, 446; Wheeler v. Young, 143 Mass. 143, 9 N. E. 531. The demand of the trust company for additional collateral would ordinarily carry the implication that, if it were not furnished, the loan might be closed out at once. That was a matter in which the bankrupt had a direct financial interest, because the accommodation makers would have looked to it for reimbursement if the collateral turned out insufficient to pay the notes. By giving the direct notes here in question, it seems probable that the bankrupt obtained from the trust company a forbearance to press collection of the accommodation notes, which constituted legal consideration for them. They do not, therefore, seem to me open to the objections that they were given ultra vires and without consideration.

[3] They were not, however, authorized in accordance with the requirements of the bankrupt's by-laws, which explicitly provided that notes, "except notes to hire money for the legitimate purposes of the corporation in the usual and regular course of business," should not be given by any officer of the corporation, "unless thereto specially authorized by the unanimous vote of the directors." After these notes had been given to the trust company, there was a meeting of the directors of the bankrupt, at which all but one were present. They were informed about the notes. The matter was discussed, and all present approved what had been done; but no formal vote was passed. The director who was not at the meeting never objected. In reliance on the additional collateral furnished by these notes, the trust company continued to carry the original loans.

We have therefore a transaction in which the bankrupt gave to the trust company its own notes as collateral for the notes of third parties, who made them at its request and for its benefit, and its notes were held and relied upon by the trust company, with the knowledge and approval of all but one of the bankrupt's directors, and without objection by any director. Under such circumstances the bankrupt cannot escape liability on the notes, because no formal vote authorizing or ratifying them was ever passed as required by its by-laws. Beacon Trust Co. v. Souther, 183 Mass. 413, 418, 67 N. E. 345. The claimant may prove on the direct notes.

Ordered accordingly.