Zottoli, J.
This is an action of tort in which the plaintiff seeks to recover for damages to the plaintiff’s schooner- *89 yacht located in a boat yard in East Boston. The'plaintiff alleges that the said damage was caused by the blowing off of the roof of a building on premises immediately adjacent to the boat yard in question. The report sets forth that “the defendant conceded at the trial that the court should find on the evidence that the roof was in a decayed and defective condition — and that there should be a finding for the plaintiff if the defendant’s relation to the premises on the day the roof was blown off, was such as to make it liable for the condition of the premises”.
The essential facts, upon which the legal relationship of the defendant to the premises is to be decided, do not appear to be in dispute. It appears that the defendant owned the premises in question in 1925; that it then conveyed title to a corporation named Whitman Wharf and Storage Company, taking back a mortgage from the corporation for $25,-000. The corporation thereafter made certain alterations to the buildings in question and after 1925 occupied the premises as a lumber yard'; that one alteration was the extension of the roof of the building adjacent to the plaintiff’s premises; that it was a section of this roof that blew off causing the damage for which the plaintiff seeks recovery; that the defendant at all times “occupied” a corner of the premises for a coal office by virtue of a provision in its deed to the Whitman Wharf and Storage .Company, paying a nominal rent and keeping an agent in its office, who was on the premises Avhen the roof blew off; that sometime before January 1, 1934, the Whitman Wharf and Storage Company was in default of interest payments and the principal of the mortgage of $25000. was overdue; that it was recognized that there was no probability that these defaults could be cured and that it was adAdsable in order to save the expense and bother of a foreclosure that the defendant take a deed to the property and discharge the mortgage; *90 that during January negotiations were conducted between a representative of the "Whitman Wharf and Storage Company and the credit manager of the defendant, who had no authority to make a contract binding on the defendant; that on January 26th, 1934 two letters were sent by the said credit manager to the representative of the Whitman Wharf and Storage Company which set out the details of a proposed settlement of the affairs of their respective companies. One of. the terms of the tentative arrangement, set out in these letters, provided that the corporation should deed the said premises to the defendant by a deed with quitclaim covenants. Another term provided “as to future tenancy” — that he (Whitman) would rent a part of the premises on certain conditions stated in said letters, “paying at $80. per month dating from January 1st, 1934. ” Another clause of one of the letters provided that the representative of the Whitman Wharf and Storage Company “will have the necessary official meeting of the Whitman Wharf and Storage Company held, and a vote passed to authorize the transfer of the property, and on receipt of these votes he will give us the deed and assign the insurance policies”. It appears that the deed above referred to was duly executed by the corporation on February 8, 1934, but no delivery of the same was made at that time because of “the necessity of having the defendant’s Board of Directors or other officers authorize the formal execution of the proposed settlement”. The case finds that on February 20th, 1934 the roof blew off and damaged the plaintiff’s boat; that the occupation of the premises by Whitman as a lumber yard, and by the defendant’s coal office in the corner of the yard, continued without change to and including February 28, 1934, and thereafter; that “on February 27, 1934 the duly authorized officers of the defendant passed proper votes authorizing the completion of the transaction *91 on practically the terms stated in the — letters above referred to — with the additional provision that the defendant should execute a lease of the premises to. Whitman.to take effect from “.January 1st, 1934”; that “at noon on February 28,1934 (the) attorney for the defendant drew a lease, —and that afternoon this lease was signed by Whitman and by the defendant;” that the lease “contained an agreement that Whitman was to lease the premises from February 1st, 1934, to pay rent of $105. per month; and on the signing of this lease, the deed to the premises mentioned above was delivered to the defendant,” — and—■ ‘later recorded”; that at the same time on said February 28, 1934, Mr. Whitman delivered to the defendant a check for $80. bearing the words “Rent for January, 1934”, and a check for $105. bearing on the front the words “February payment,” and said checks were accepted by the defendant”.
It appears to be conceded by the plaintiff that the various transactions reported were carried out in good faith. There is no claim made that the record title and other documents were merely a cover and a fraud. Therefore, cases like Maionica v. Piscopo, 217 Mass. 324, have no application to the facts reported in this appeal.
The plaintiff’s contention, as set out in his brief, is that “for the purpose of this case, the defendant was landlord and Whitman its tenant on February 20, 1934”, and therefore should be held liable for the alleged damage caused on that day. It is apparent from the report that the "defendant did not have actual ownership or control of the premises in question on February 20th, 1934, the date on which the roof in question blew off. That the lease “contained an agreement that Whitman was to lease the premises from February 1, 1934” and that the checks above alluded to bore the words “Rent for January, 1934”, and “February payment”, did not alter the fact that the defendant had no *92 ownership or control of the premises on that date. The parties to the so-called lease called the instrument a “lease” of the premises from January 1st, 1934, but the facts reported disclose otherwise. It is well settled that a lease is a present, demise, and entitles the tenant to the exclusive possession for the period demised. Before February 28th, 1934, the alleged lessor was not in a position where it could give a lease of the premises in question. Up to that date the estate in question was held by others who apparently enjoyed its fruits. What a contract may be named or called by the parties is not conclusive of what it is in legal contemplation. It needs no extended citation of authorities to show that the law ordinarily ignores false appellation. To call a paper covering an expired term, a lease does not make it such any more than the calling a license a lease makes it a lease or calling of an agreement for a lease a lease makes it such. cf. Jones, Landlord and Tenant, §48. Redman’s Law of Landlord and Tenant 8th Ed. 124. On February 20, 1934, the defendant had acquired no rights of ownership because of the negotiations between the parties up to that date. These rights were then in the Whitman Wharf and Storage Company, and with it rested the duties, consequent upon the ownership and control of the property in question. The defendant cannot be held liable upon any theory pertinent to actual ownership and control of the premises in question on February 20, 1934, for it is well settled that there can be no fault, or negligence, or breach of duty, where there is no act, or service, or contract, which a party is bound to perform or fulfill”. Sweeney v. Old Colony & Newport Railroad Co., 10 Allen 368, 372. Bernabeo v. Kaulback, 226 Mass. 128, 131. Goodwin v. E. B. Nelson Grocery Co., 239 Mass. 232, 234. Florence v. Bigelow Hartford Carpet Co., 254 Mass. 507. Telless v. Gardiner, 266 Mass. 90, 92. Karlowski v. Kissock, 275 Mass. 180, 183. *93 Pierce v. Hunnewell, 285 Mass. 287. Royal Indemnity Company v. Pittsfield Elec. Co., A. S. (1935) 2649, 2650.
It is obvious that the only possible avenue of liability remaining to the plaintiff arises out of the status of the defendant to the premises in question created by its acts and conduct in and after the date the accident happened. This is principally evidenced by the agreement, deed and lease which were delivered on February 28th, 1934, and the acceptance of the so-called rent from a tenant of the previous owner for the occupancy of a part of the premises for the period prior to the delivery of the deed, and which is alleged to have been paid under the terms of the so-called lease. The plaintiff acquired no contractual right out of the papers above mentioned, for “it is a well established rule of law that no person can take advantage of a covenant or condition” (and we may add, a contract) except he be a party or privy thereto. Rodgers v. Union Stone Co., 130 Mass. 581, 588. Saunders v. Saunders, 154 Mass. 337, 338. Boardman v. Boardman, 157 Mass. 410). Tobin v. Central Vermont Ry. Co., 185 Mass. 337, 339.
The plaintiff urges that “for the purpose of this case, the defendant was landlord and Whitman its tenant on February 20, 1934”. He reaches this conclusion on alleged doctrines of estoppel and ratification. Neither of these doctrines can aid the plaintiff on the facts here presented. All that need be said as to the plaintiff’s contention based on the doctrine of estoppel is that there is nothing in this report that shows that the defendant’s conduct in any manner induced the plaintiff to change his position in any particular. There is no claim that any deception or fraud was practiced on the plaintiff. He was not a party to the alleged agreement and lease, and no property or property right was given up by the plaintiff to anybody. It is well settled that “this doctrine — is not to be applied except when *94 to refuse it would be manifestly inequitable”. As was said by Knowlton, J., in Tracy v. Lincoln, 145 Mass. 357; “The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate”. Deans v. Eldredge, 217 Mass. 583, 588. Herman v. Conn. Mutual Life Ins. Co., 218 Mass. 181, 186. E. V. Harmon & Co. v. Wm. Filene’s Sons Co., 232 Mass. 52, 55. Rockport Granite Co. v. Plum Island Beach Co., 248 Mass. 290, 295. Calkins v. The Wire Hardware Co., 267 Mass. 52, 67.
As to ratification, it is true that a tort can “be ratified so far as to make an act done in the course of a principal’s business, and purporting to be done in his name, his tort”. Dempsey v. Chambers, 154 Mass. 330, 333, 334. O’Reilly DeCamara v. Brooke, 209 U. S. 45, 52. Cf. Nims v. Mt. Hermon Boys’ School, 160 Mass. 177, 182. Cf. Beacon Trust Co. v. Souther, 183 Mass. 413, 416. Collins v. Splane, 230 Mass. 281, 286. O’Neil v. National Oil Co., 231 Mass. 20, 27.
But the plaintiff’s contention ignores two essentials underlying the doctrine of ratification; neither of which can be found on the facts reported. The first of these essentials is that it must appear the alleged ratifier knew all the material facts of the original transaction. This proposition was well stated by Bigelow, C. J., in the case of Combs v. Scott, et als., 12 Gray 493, at page 497, in the following language: “Whoever — seeks to procure and rely on ratification is bound to show that it was made under such circumstances as in law to be binding on the principal, especially to see to it that all material facts were made known to him’ ’. And see, Dickenson v. Inhabitants of Conway, 12 Allen 487, 491. Manning v. Leland, 153 Mass. 510, 513. Beacon Trust Co. v. Souther, 183 Mass. 413, 416. Swartz v. American Surety Co. of New York, 231 Mass. 490, 494, and Sears v. *95 Corr Mfgr. Co., 242 Mass. 395, 400, 401 where the doctrine is affirmed. The second requirement is that the act should in fact be done, or purport to be done in behalf of the principal. New England Etc. Co. v. Rockport Granite Co., 149 Mass. 381, 382. Hosher-Plat Co. v. Muller, 238 Mass. 518, 524. Hixon v. Starr, 242 Mass. 371, 374.
The case before us, in principle, is somewhat like Commes v. Houghton, 102 Mass. 211, where the alleged servant whose negligent act caused the injury did not profess to act as servant to the defendant at the time the alleged negligent act was committed, and the decision was that by “availing himself of the work done, and paying and receiving payment therefor, in the manner and under the circumstances stated would not be an adoption by the defendant of anything which was not a part of or result from the work thus accepted”. cf. Keedy v. Amherst, 222 Mass. 72. What has been said sufficiently shows that there is no material error in the court’s treatment of the plaintiff’s requests; and that its finding is warranted by the evidence.
Report dismissied.