ANGELA MAIONICA *vs.* BENJAMIN PISCOPO.

Suffolk. January 23, 1914. — March 31, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Landlord and Tenant,* Control of premises by owner in spite of pretended lease, Liability of landlord for defect in common stairway.

In an action against the owner of a tenement building, by a woman who had occupied one of the tenements as a tenant for nine years, for personal injuries from a fall caused by the giving way of a defective railing of the platform of an iron stairway at the rear of the building used in common by the various tenants, where there is ample evidence that the railing, although apparently in good condition, was so eaten into by rust as to afford no real protection, and that this defective condition would have been discovered by a seasonable examination, and where the defendant produces in defense a paper purporting to be a lease of the entire building to a third person, but the plaintiff contends that the alleged lease is a sham to shield the defendant from the responsibilities of ownership, and introduces evidence tending to show that the defendant at the time of the accident, in spite of the pretended lease had retained control of the building, including the platform and railing, the question, whether the defendant retained such control and thus owed to the plaintiff the duty of maintaining the railing in as good condition as it appeared to be in when the plaintiff began her last tenancy, is for the jury.

TORT for personal injuries sustained by the plaintiff on May 12, 1911, from the giving way of the railing of the platform of an iron stairway at the rear of a tenement house owned by the defendant, in which the plaintiff was a tenant under a lease from the defendant. Writ dated June 6, 1911.

In the Superior Court the case was tried before *Aiken,* C. J. The evidence is described in the opinion. At the close of the evidence the defendant asked the Chief Justice to make the following rulings, besides others that were made by him:

"1. Upon all the evidence the plaintiff is not entitled to recover, and you must return a verdict for the defendant.

"2. If you believe the defendant executed and delivered to Zerella on the first day of October, 1910, a lease of the premises as shown by the lease introduced in evidence, then he had divested himself of control of the premises in question, and is not liable in this action. [This was held to have been given in substance in the charge of the Chief Justice.]

"3. An action of tort cannot be based upon breach of an agreement to repair, that is, a negligent omission to repair premises is not the ground of an action of tort.

"4. Plaintiff's action is in tort, and an action of tort has for its foundation negligence of the defendant, and this means more than a mere breach of a promise. There must be some active negligence or misfeasance and some breach of duty owed by the defendant to the plaintiff distinct from a breach of contract.

"5. If there was no specific agreement between the defendant and Zerella, the tenant, in reference to repairs after the execution of the lease, then the lease by its terms fully sets forth the entire contract between the defendant and Zerella, and there was no obligation on the part of the defendant to make any repairs on the premises in question. Repairs and examinations made by a landlord voluntarily and gratuitously upon complaint of a tenant do not impose on the landlord an obligation to make repairs which he has not assumed with the contract of letting."

"7. The rule is settled in this Commonwealth that a tenant cannot recover against his landlord for personal injuries occasioned by the defective condition of the premises let unless the landlord agrees to repair, makes the repairs, and is negligent in making them.

"8. If after the execution of the lease to Zerella, the defendant agreed to make outside repairs, he is not liable to any person injured by lack of such repairs unless before said injuries he has been specifically notified of the need of such repairs, and after the receipt of such specific notice he is then entitled to a reasonable time in which to make the repairs."

"12. The mere fact that by the terms of the lease the defendant 'is to have the right to use the yard annexed to said house for all yard purposes,' did not give him any right to use the outside stairway leading from the yard to the house, and did not mean that such outside stairway remained in the control or possession of the defendant so as to render him responsible for their condition.

"13. This stairway in question was in the control and possession of Zerella, the tenant, and the duty rested upon Zerella to inspect the stairway, and keep it in proper condition for the safety of his tenants.

"14. When an owner of premises which are leased to a tenant agrees with the tenant either to make specific repairs or generally to make such repairs as may be needed from time to time on the premises, and then negligently fails to repair after notice from the tenant, he is not liable in tort for an injury received by the tenant or one claiming under him, and due to the want of repairs of which he was notified.

"15. In order to establish liability on the part of the defendant in this case, it is not sufficient for the plaintiff to show that the defendant agreed to make all necessary outside repairs, but the plaintiff must go further and show that the defendant made a specific agreement with the tenant, Zerella, not only to make all necessary outside repairs, but that he also specifically agreed that he would look after the condition of these steps, and maintain them in a safe condition during the term of the tenancy, and such agreement must be specific and plainly show that Zerella considered himself entirely relieved from any responsibility of any care or duty in connection with these steps."

"18. The rights, responsibilities and obligations of the defendant Piscopo in respect to these premises, are fully defined and set forth in the lease under which Zerella, the tenant, occupies and as long as the lease remains in force, no words or conduct of Piscopo can abridge or nullify his rights under the lease, or enlarge or increase his responsibilities and obligations, as far as the plaintiff is concerned.

"19. There has been no evidence introduced into this case which would warrant you in believing that at the time this accident occurred, Zerella was not occupying the premises in question, including the stairway in question, under a written lease."

"24. There has been no evidence introduced into this case that Piscopo ever made any outside repairs on this property until after he had been notified by Zerella, the tenant, of the necessity thereof and there is no evidence that Piscopo had before the accident to the plaintiff been notified of the necessity of any repairs on this stairway and railing. Until such notice, there could be no responsibility on the part of Piscopo."

The Chief Justice refused to make any of these rulings (although he was held to have given the second in substance), and

submitted the case to the jury with other instructions, concluding his charge as follows:

"The obligation on the part of Piscopo — whether he can be strictly termed landlord or not, I instruct you in this aspect of the case—was, if he retained control of the landing and the railing, to keep them in as good condition as they appeared at the time that Mrs. Maionica became a tenant in January, 1910.

". . ., if they were not maintained in as good condition as they appeared to be at that time, and Piscopo was the person who had control of the railing, then there is responsibility in this action for damages which you will estimate upon the basis of the considerations that I have presented to you in the first part of what I had to say."

The jury returned a verdict for the plaintiff in the sum of $7,048; and the defendant alleged exceptions.

*W. R. Bigelow,* for the defendant.

*C. W. Bond,* (*H. E. Perkins* with him,) for the plaintiff.

DE COURCY, J. The defendant was the owner of a five story building containing sixteen tenements, situated on the corner of Moon and Fleet Streets in Boston; and the plaintiff had been a tenant therein for nine years at the time of the accident. From the front entrance on the street there ran a practically straight hallway to the rear door, where there was an iron platform with iron steps descending therefrom into the back yard. The platform and steps were attached to the wall of the building, and the outer side of each was guarded by an iron railing or fence. On May 12, 1911, as the plaintiff stepped from the hallway to the platform she slipped and while in the act of falling she grasped this railing; it gave way, and she was thrown to the ground and seriously injured.

We do not understand that the plaintiff's due care is in dispute. There was ample evidence that the iron railing, although apparently in good condition, was in fact so eaten into by rust that it afforded no real protection. Seasonable examination would have disclosed this defective condition, as was demonstrated by the appearance of the fragment that was exhibited in evidence.

The platform and the back stairs connected with it were used in common by the various tenants of the building. The duty of

keeping this railing in as good condition as it appeared to be in at the beginning of the plaintiff's existing tenancy was imposed upon the person in whose control it remained. *Domenicis* v. *Fleisher,* 195 Mass. 281, and cases cited. Unquestionably that control and duty rested upon either the defendant or one Zerella. If the paper in evidence, purporting to be a lease of the entire building from the defendant to Zerella, was a genuine and complete statement of their interest in the property in question, then the defendant was under no obligation to the plaintiff to maintain this railing, and the jury were so instructed. But however binding this paper may have been between Piscopo and Zerella, the plaintiff was not a party thereto and was not bound by it. *Wilson* v. *Mulloney,* 185 Mass. 430. Her contention was that the alleged lease was a sham, a mere paper transaction devised to shield the owner of the property from the responsibilities of ownership; or at least that, whatever Zerella's real right was in the property, the defendant and not Zerella was in control of the platform and railing at the time of the accident.

The bulk of the testimony was directed to this controlling issue. Among other things it appeared that, although the term of this lease purported to be for five years beginning October 1, 1910, the defendant had given to Zerella an earlier lease for three years, beginning November 1, 1909, when a similar and unexpired lease to one Melchianna was outstanding. There was also evidence tending to show that when Zerella attempted to raise the plaintiff's rent to $16 she went to the defendant, and he told her not to pay more than $11, and the increase was not put into effect; and that in June, 1911, when the defendant wanted to evict the plaintiff because she had sued him, notwithstanding the existence of this Zerella lease he made a new lease of her premises in order to enable a civil constable to give her a notice to vacate. The defendant also had a policy for accident insurance covering this building, and to the question in the application "Occupation of employees?" the answer made by him was "Care and custody of premises." The defendant also, during the pendency of the alleged lease, made repairs on the roof, water conductors and gutters, employing a man who commonly made the repairs on his other tenement properties; and he employed Zerella to put in new windows throughout this building. Finally it appeared that after

the accident the defendant replaced the broken railing with a new one. To the admission of much of this evidence the defendant excepted, but it was competent for the narrow purpose for which it was admitted, namely, to show that the defendant retained possession and control of the platform at the time of the plaintiff's injury. There was ample evidence that he did have such control, and that consequently the obligation rested upon him to maintain the railing in as good condition as it appeared to be in when the plaintiff began her last tenancy. *Ward* v. *Blouin,* 210 Mass. 140. *Wilson* v. *Mulloney,* 185 Mass. 430. *Perkins* v. *Rice,* 187 Mass. 28. *Readman* v. *Conway,* 126 Mass. 374. *Grella* v. *Lewis Wharf Co.* 211 Mass. 54.

As to the rulings requested and refused. It follows from what has been said that the trial judge rightly refused to give the first. The second was given in substance as being the effect of a *bona fide* lease that expressed the entire contract between the parties. The third, fourth, fifth, seventh, eighth, fourteenth, fifteenth and twenty-fourth requests were not applicable, because the plaintiff's action was not based on the alleged breach of a landlord's agreement to make repairs. The twelfth assumes that the defendant's only obligation to keep the railing in repair was created by the lease; whereas the plaintiff made no such contention. The thirteenth, eighteenth and nineteenth assume the truth of the defendant's evidence on the main facts that were in controversy, and were rightly refused. The portions of the charge that related to the subject matter of his requests were sufficiently favorable to the defendant.

*Exceptions overruled.*