BRUNO BORONSKIS & another *vs.* THE TEXAS COMPANY.

Norfolk.   April 2, 1962. — June 4, 1962.

Present: WILKINS, C.J., SPALDING, KIRK, & SPIEGEL, JJ.

*Landlord and Tenant,* Control of premises, Landlord's liability to third person, Repairs. *Negligence,* One owning or controlling real estate, Gasoline tank. *Evidence,* Extrinsic affecting writing.

An owner of property seeking to recover from the owner of an adjacent gasoline station for damage to the plaintiff's property from gasoline leaking from a defective tank in the station was not precluded by the parol evidence rule from showing, as bearing on control of the tank, that, although a lease of the station given by the defendant some years before specifically provided for maintenance of the leased premises and equipment in good repair by the lessee, in fact the defendant had always attended to and paid for the repairs.   [480]

Evidence that the owner of a leased gasoline station had always attended to and paid for repairs at the station despite a provision of the lease requiring the lessee to maintain the station and its equipment in good repair warranted a finding that the owner retained control of a tank which became defective and allowed gasoline to leak into and damage adjacent property and was liable to the owner of the adjacent property for negligence respecting the leakage. [480]

TORT. Writ in the Superior Court dated July 20, 1953.

The action was tried before *Donahue,* J.

*Robert W. Cornell* for the defendant.

*James M. Langan* (*Patrick F. Murphy* with him) for the plaintiffs.

SPALDING, J. In this action of tort the jury returned a verdict for the plaintiffs, and the case comes here on the defendant's exceptions.

There was evidence of the following: The plaintiffs owned and operated a diner in Stoughton which was adjacent to a gasoline station owned by the defendant and leased to one Zumas who ran the station. The lease provided that the repairs and maintenance of the station were the responsibility of the lessee.[1] However, during the period of the lease (about fourteen years) the defendant had voluntarily attended to virtually all of the repairs without any charge to Zumas. An independent contractor employed by the defendant testified that he tested the gasoline tanks for leaks "only at the order of the [defendant]" and that he would not test them at the request of Zumas.

Bruno Boronskis (hereinafter called the plaintiff) testified that he first smelled gasoline in his diner early in July, 1952. Early in December he complained of this to Zumas and the defendant's local agent. On December 18, 1952, the plaintiff, through his attorney, sent a letter to the defendant stating that he had had tests made by the gas company and the tests revealed that there were no leaks in the gas pipes; and that the men making the tests "believed

---

[1] The lease read: "Lessee shall, during the term of this agreement, maintain the said premises, buildings and equipment, in good repair and in a clean, safe and healthful condition. In event of Lessee's failure so to do, the Lessor may make the necessary repairs for the account of Lessee. . . ."

there was a gasoline leakage on the premises next door.''
The letter concluded: ''These odors are persisting and I
request that you make an immediate examination and in-
spection of your premises and equipment on which the Tex-
aco Station is being run to check on gasoline leaks.'' The
plaintiff received no reply to this letter. On March 18,
1953, the plaintiff through his attorney again wrote to the
defendant stating that a dangerous condition (leaking of
gasoline) existed at the gasoline station which was seriously
affecting the plaintiff. The defendant was requested to
''do something at once.''

On March 31, 1953, gasoline was found in the cellar of the
plaintiff's diner, which had seeped up through the floor.
Upon order of the fire department the diner ceased opera-
tions. That the gasoline that entered the diner came from
the adjacent station and that it caused substantial damage
to the plaintiff's property is not disputed.

A broken flange on one of the gasoline tanks, from which
the gasoline had escaped, was subsequently discovered.
According to one Connors, who on March 31 was hired by
the defendant to investigate and to remedy the condition at
the gasoline station, one of the tanks had a broken flange
and there was a torn place which was rusty. ''The tear he
saw had existed more than a week or a month, he would say
about a year.'' An air pressure test was applied by Con-
nors to discover the leak. If such a test ''had been put on
the tank with the broken flange at any time after the flange
broke the test would have shown that there was a leak in
the tank.''

The defendant's exceptions arise out of the denial of its
motion for a directed verdict and the refusal of the judge to
grant certain requests for instructions. The question pre-
sented by these exceptions is the same and, as stated by the
defendant, is this: ''[C]an a damaged third person hold
the owner of leased property liable for the condition of the
property where it has been leased to another, apparently in
good condition (where the condition arose after the lease)
by proof of continual maintenance of the property by the
lessor?''

The defendant argues that the lease, which is neither a sham nor against public policy, is "invulnerable to attack by third persons" and cannot be contradicted by parol evidence. This contention is without merit. It is settled that the "rule that parol evidence is not admissible to vary the terms of a written contract, does not apply to third persons who are not parties to the contract." *Wilson* v. *Mulloney,* 185 Mass. 430, 433. *Maionica* v. *Piscopo,* 217 Mass. 324, 328. *Guaranty Security Corp.* v. *Eastern S.S. Co.* 241 Mass. 120, 123. *Kerwin* v. *Donaghy,* 317 Mass. 559, 566. The plaintiff, therefore, who was not a party to the lease between Zumas and the defendant, was not bound by its terms. In essence, the question was one of control, for responsibility is an incident of control. Responsibility and control rested either on Zumas or the defendant. It was, therefore, open to the plaintiff to show, despite the terms of the lease, what the actual situation was between Zumas and the defendant with respect to control of the instrumentality (the defective tank) causing the damage. There was ample evidence that the defendant retained control of it, as evidenced by the fact that it had procured and paid for all repairs (including the replacing of the old tanks with new tanks after the plaintiff's property was damaged) to the gasoline station from the inception of the lease. *Maionica* v. *Piscopo,* 217 Mass. 324, 328. *Laskowski* v. *Manning,* 325 Mass. 393, 397–398. Properly no contention has been made that a finding of negligence on the part of the defendant was not warranted.

*Exceptions overruled.*