JOSEPH J. SAWTELLE, JR., trustee, & another *vs.*
MYSTIC VALLEY GAS COMPANY & another
(and two companion cases).[1]

Middlesex.    January 15, 1973. — January 22, 1974.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Agency,* Existence of relation, Lent employee, Independent contractor.

A contract between a gas company and a contractor for laying the company's pipes, and certain evidence, did not warrant a finding that employees of the contractor, while doing the work of laying the pipes, were loaned servants of the gas company for whose negligence it would be responsible. [674-677]

---

[1] The companion cases are: Wellwood Company, Inc. *vs.* Bond Brothers, Inc. & others, and Elmas Adamian *vs.* Mystic Valley Gas Company.

Sawtelle *v*. Mystic Valley Gas Co.

ACTIONS OF TORT.   Writs in the Superior Court dated October 11, 1965, February 11, 1966, and March 31, 1966.

The actions were reported by *Ponte, J.*

*Robert W. Cornell* (*John R. Kewer* with him) for Bond Brothers, Inc.

*David W. Kelley* (*Francis X. Kiley* with him) for Mystic Valley Gas Company.

*William B. O'Keefe & Francis E. Dooley* (*James F. Murphy, Jeremiah W. Mahoney & Robert J. Muldoon, Jr.,* with them) for the plaintiffs.

GOODMAN, J.   This is a report (G. L. c. 231, §§ 111, 124) of tort actions arising out of a gas explosion in a Melrose shopping center, which substantially destroyed two buildings and caused other extensive property damage. Over one hundred actions for property damage were brought against (among others) Mystic Valley Gas Company (Mystic), which supplied natural gas to the tenants of the shopping center, and Bond Brothers, Inc. (Bond), which had installed the gas main and service connections to the shopping center.[2] Eight representative actions were chosen to be consolidated for jury trial on the issue of liability, all plaintiffs agreeing to be bound by the results of that trial. It was stipulated that if liability were determined against any or all of the defendants, then all the cases would proceed at a later date to an assessment of damages by a judge of the Superior Court sitting without jury. See *Charles Dowd Box Co. Inc.* v. *Fireman's Fund Ins. Co.* 351 Mass. 113, 115 (1966); *Chase* v. *Roy,* 363 Mass. 402 (1973). The eight cases were tried from December 2, 1968, to February 21, 1969. At the conclusion of the evidence, the parties stipulated that the jury be given special questions determinative of the liability of the various defendants and that the court "would order the entry of verdicts, under leave reserved" on

---

[2] Other defendants were Joseph G. Sawtelle, Jr., trustee of the Towers Plaza Shopping Center Trust, owner of the shopping center, and Joseph G. Sawtelle Company, Inc., the general contractor who built the shopping center. The last two named defendants (the Sawtelle defendants) also brought suit against Mystic and Bond in the case which captions this opinion; in addition Mystic impleaded Bond in some cases in which Bond was not named a defendant.

the basis of the answers. See *Thurlow* v. *Welch,* 305 Mass. 220, 223 (1940); *Cunningham* v. *Boston & Maine R. R.* 309 Mass. 215, 216 (1941). Five questions were presented to the jury; the answers to three of them found that Mystic was negligent and that the two Sawtelle defendants were not negligent. Accordingly, the court "directed the entry of verdicts" in favor of the two Sawtelle defendants and for all the plaintiffs against Mystic.

The report is not concerned with the trial judge's actions in these respects. It is concerned with the liability of Bond, which would result if it is responsible for the personnel who actually laid the pipe (the on-site employees), the jury's findings — accepted in this report and not now disputed — having established that the negligent installation of the pipes caused the explosion.[3] Bond is absolved from liability for the acts of its on-site employees only if they were, while installing the pipes for Mystic, the loaned servants of Mystic for whom Mystic was liable. The jury did find that they were loaned servants of Mystic in its answers to a special question, numbered five.[4] However, the judge thereafter ruled that question five was "on the evidence a matter of law for my decision" and that the Bond employees were not the loaned servants of Mystic. He then ordered the entry of "verdicts" establishing the liability of Bond and reported (*Mathewson* v. *Colpitts,* 284 Mass. 581 [1933]) three of the cases[5] for our determination, in effect,

---

[3] The report also raises the issue of the sufficiency of the evidence of negligence on the part of Bond's employees other than those who installed the pipes. As will appear, we do not reach this issue.

[4] "5. Was the status of the employees of Bond Bros., Inc. during the performance of their work for Mystic Valley Gas Company at the Towers Plaza Shopping Center that of

a. hired or loaned servants to Mystic Valley Gas Company?
b. employees of Bond Bros., Inc. as an independent contractor?

"INSTRUCTIONS: You must answer 5(a) and 5(b) Yes or No. You cannot answer both questions 5(a) and 5(b) Yes; you cannot answer both questions 5(a) and 5(b) No."

The jury answered 5(a): Yes and 5(b): No.

[5] The three cases in which the record was to be transmitted were designated by stipulation:

whether there was sufficient evidence to sustain the jury's finding that the Bond employees were loaned to Mystic while they were laying the pipe at the shopping center.[6] The cases were argued on this footing by the parties and we turn to the evidence on this issue presented in the report, consisting of the specifications for laying welded steel gas mains and other documents comprising the annual contract between Bond and Mystic for such work and a "summary of all the evidence bearing upon the matters covered by this report." In our view this evidence is insufficient as a matter of law to support the jury's finding.

The annual contract between Bond and Mystic under which the pipe was laid was made pursuant to a letter by Mystic inviting Bond "to submit unit price proposals covering . . . work . . . to be done in accordance with specifications . . . ." The specifications obligated Bond to construct gas mains "all in accordance with existing State and Local Regulations and the latest A.S.A. Code B31.1.8" and were "intended to cover a complete workmanlike job in every respect . . . ." Bond, the "contractor," was prohibited from "sublet[ting] any part of the work covered" without approval from Mystic's representative and was required to "guarantee and maintain all permanent paving and resurfacing installed by him for a period of one year from the date of completion of the Contract," as well as to keep in repair, also for one year, any structures which might be "disturbed or injured." Bond's assumption of responsibility for the satisfaction of these obligations (among others) for the breach of which Bond was answerable in damages to Mystic, is hardly consistent with any relin-

---

[6] The questions presented in the report are:

"1) Should question 5 have gone to the jury, or was the question whether Bond Bros.' employees were hired by or loaned to Mystic Valley Gas Co. a question of law?

"2) If the answer to the first question is that the issue of hired/loaned servants is one of law, did I rule correctly that the on-site employees of Bond Bros., Inc., were not hired by or loaned to Mystic Valley Gas Co.?"

A third question dealt with the sufficiency of the evidence of negligence of Bond's employees other than the on-site employees. Because of our answer to the first two questions, we need not consider the third. See fn. 3.

quishment by Bond to Mystic of control over Bond's employees who were to perform the contract from which these obligations arose. Bond was not under its contract merely providing workmen to be integrated with Mystic's work force "engaged in the same general task." *Bell* v. *Sawyer,* 313 Mass. 250, 252 (1943). Cf. *Galloway's Case,* 354 Mass. 427 (1968); *Ledbetter* v. *M. B. Foster Elec. Co. Inc.* 357 Mass. 780 (1970). Rather it assumed responsibility for and "undertook to accomplish a given result" (*Fox* v. *Pallotta,* 274 Mass. 110, 113 [1931]) — the "installations of mains and services in our [Mystic's] territory." Bond points to provisions of the contract which speak variously of approval, inspection and direction by Mystic. We have examined these provisions carefully. They do not appear to us to rebut the inference that the right to control the employees of Bond in the details of the work remained with Bond. Restatement 2d: Agency, § 227, comment b, p. 501. See *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 225 (1909); *Benoit* v. *Hunt Tool Co.* 219 La. 380, 390 (1951). The contract as a whole is quite similar to the contract in *Harding* v. *Boston,* 163 Mass. 14 (1895), in which the Supreme Judicial Court held that there was insufficient evidence to hold the city responsible for damages arising from the construction of a sewer for the city. What the court said in that case (at 18) is also applicable here: "The work was to be done to the satisfaction and acceptance of the defendant's agent, and supervision and superintendence were provided for, and the power of giving directions as to the work in certain particulars. These provisions appear to us to go no further than to enable the city to secure the proper performance of the work, and do not show that Gill [with whom the city contracted to construct the sewer] and his men were servants of the city. . . . [Citations omitted.] The directions which the superintendent of sewers and the inspector might give were in order that certain results should be accomplished, and did not enable those officers to take the control and direction of Gill's men. Gill was still the contractor, in the responsible charge of his men. Looking at the contract as a whole, we think it clear that he

should be regarded as an independent contractor, for the negligence of whose men the city was not responsible." See also *Morgan* v. *Smith,* 159 Mass. 570, 574 (1893); *Hooe* v. *Boston & No. St. Ry.* 187 Mass. 67, 70 (1904); *Anglim* v. *Brockton,* 278 Mass. 90, 95 (1932).

The summary of evidence appended to the report does not further Bond's contention. It contains nothing to indicate that the contract did not represent the actual situation as to the right to control the on-site employees. Cf. *Devlin* v. *Newfell,* 275 Mass. 279, 282-283 (1931); *Boronskis* v. *Texas Co.* 344 Mass. 477, 480 (1962). Indeed the summary of evidence states that the installation was made "under a contract with the gas company ... consist[ing] of an invitation to bid," specifications and other documents. See *Kettleman* v. *Atkins,* 229 Mass. 89, 91 (1918). Further, Bond's contention is that it was the contract which gave Mystic the right to control and that Mystic's activities were consistent with the contract.

Since there was insufficient evidence that "the right and power of directing in detail how the work should be done ..." (*Doyle* v. *LaCroix,* 336 Mass. 484, 487 [1957]) had been transferred to Mystic, the on-site employees, as a matter of law, were not the loaned servants of Mystic. Cf. *McDermott's Case,* 283 Mass. 74, 76-77 (1933). Accordingly, our answer to question 1 is that the issue whether the on-site employees were the loaned servants of Mystic should not have been submitted to the jury; on the facts of this case it was a matter of law for the judge. We answer question 2, yes.[7]

The case is remanded to the Superior Court for further proceedings in conformity with this opinion.

*So ordered.*

---

[7] We therefore need not answer the third question. See fns. 3 and 6. We also need not consider the arguments in connection with the three bills of exceptions filed by Mystic since Mystic has stated in its brief that it waives all of its exceptions if "the ultimate ruling of this court at this time in these cases is that the defendant Bond Bros., Inc., is liable ...." It would appear that our disposition of the questions in this report will have that effect.