KENNETH RAMSEY'S (dependents') CASE.

Suffolk.    May 14, 1976. — March 16, 1977.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Workmen's Compensation Act,* Double employment, Finding by Industrial Accident Board.

Where a corporation engaged in earth moving and machinery rental business sold a bulldozer to a construction company and, at the company's request, lent it an operator to run the bulldozer until the company could get its own operator, the machinery corporation was the "general employer" of the operator within the meaning of G. L. c. 152, § 18. [202-204]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Prince, J.*

The case was submitted on briefs.

*Charles M. Crowley* for Continental Insurance Company.

*Robert W. Plunkett* for Lumbermens Mutual Casualty Company.

*Edward R. Lembo* for the claimant.

GOODMAN, J.   The Continental Insurance Company (Continental) appeals from a judgment of the Superior Court ordering it to pay a workmen's compensation claim arising from the death of Kenneth Ramsey, a bulldozer operator. Claims were filed with the Industrial Accident Board against both Continental, as the insurer of Ashland Excavating Company, Inc. (Ashland), and Lumbermens Mutual Casualty Company (Lumbermens), as the insurer

for A. J. Lane Construction Corp. (Lane).[1] The reviewing board affirmed and adopted the findings and decision of the single member and ordered Lumbermens to pay the claim for compensation. On Lumbermens' appeal to the Superior Court the judge reversed the decision of the reviewing board and entered a judgment ordering Continental to pay the claim.

The parties do not contest the decision of the board that Ramsey's death is compensable under the Workmen's Compensation Act, G. L. c. 152. The issue is which of the two insurers is liable as the insurer of Ramsey's employer, and in that connection whether the last paragraph of G. L. c. 152, § 18, inserted by St. 1969, c. 755, § 2,[2] is applicable.

The single member, to whose decision we look (see *Russo's Case,* 1 Mass. App. Ct. 206 [1973]), found that Ashland, which was in the earth moving and machinery rental business, sold a bulldozer to Lane about two weeks before August 30, 1972, the date of Ramsey's death while at work. At the time of the sale Lane "requested [that] Ashland loan them [Lane] an operator to run this bulldozer until Lane could get one of their own, because Lane was short an operator. Ashland did supply this operator ... Ramsey." Ramsey had been carried on Ashland's payroll

---

[1] The claimant is Virginia A. Ramsey, widow of the deceased Kenneth Ramsey. The claims are for dependency compensation for the widow and the three minor children and for the payment of the funeral bill.

[2] The statute (hereinafter sometimes referred to as the 1969 statute) is entitled "An Act relative to the liability of general employers and special employers under the workmen's compensation act." It provides (§ 2): "In any case where there shall exist with respect to an employee a general employer and a special employer relationship, as between the general employer and the special employer, the liability for the payment of compensation for the injury shall be borne by the general employer or its insurer, and the special employer or its insurer shall be liable for such payment if the parties have so agreed or if the general employer shall not be an insurer or insured person under this chapter."

Section 1 of the 1969 statute added the following sentence to the definition of employer in G. L. c. 152, § 1(5): "The word 'employer' shall include both the general employer and the special employer in any case where both relationships exist with respect to an employee."

"for about two years prior to, and including, August 30, 1972. Ashland withheld State and Federal taxes and Social Security deductions for this employee, and also paid its share of Social Security taxes." Ramsey continued to be paid the same each week plus overtime. Under the arrangement between Ashland and Lane, Ramsey would make out his own time card for the time worked with Lane and give the card to Ashland. Ashland would make out the payroll and bill Lane for the hours Ramsey had turned in as having worked. Ashland would bill Lane "probably $2.00 more an hour" over Ramsey's hourly rate of $6.75 an hour. The single member also found that "[a]pparently it was a common practice to exchange operators as needed between similar types of businesses, as they have more machinery than operators." The arrangement was to continue "until Ashland needed him [Ramsey] or until Lane obtained another operator."

The single member further found that on August 30, 1972, Ramsey "was under the direct control and supervision" of Lane and that on that date "Ramsey was an employee of" Lane, whose insurer, Lumbermens, was ordered to pay the claim for compensation. The single member further found that "Ramsey was not an employee of Ashland Excavating Company as of August 30, 1972," and dismissed the claim against Continental. We agree with the trial judge that the board (which affirmed and adopted the decision of the single member) was in error; we affirm the judgment which dismissed the claim against Lumbermens as the insurer of Lane, properly characterized by the trial judge as "a special employer," and which ordered that the claim be paid by Continental, the insurer of Ashland, designated as the "General Employer."

It is familiar law that on judicial review the findings and decision of the reviewing board are final unless they are wholly lacking in evidential support or tainted by error of law. *Nowak's Case,* 2 Mass. App. Ct. 498, 499 (1974). "The general findings of the board are to be sustained unless different findings are required as matter of law." *McGilvray's Case,* 355 Mass. 447, 448 (1969). Here, how-

ever, the subsidiary findings made by the single member as to the relationships between Ramsey and Ashland and between Ashland and Lane preclude, as matter of law, the unqualified general finding that Ramsey was "not an employee of Ashland." Those subsidiary findings compel a finding that Ramsey, at the time in question, though a special employee of Lane, was in the general employ of Ashland. Nor would the evidence in the transcript before us support any other view. See *Brooks's Case*, 338 Mass. 692, 693 (1959). See also *Campinha* v. *James J. Devine, Inc.* 1 Mass. App. Ct. 482, 483-484 (1973). Cf. *Canavan's Case*, 364 Mass. 762, 766-767 (1974).

Continental does not seriously dispute that Ramsey was an employee loaned by Ashland to Lane. The status of such an employee has long been recognized in our law. In *Galloway's Case*, 354 Mass. 427, 430 (1968), the court said, quoting from *Langevin's Case*, 326 Mass. 43, 47-48 (1950): "In *Coughlan* v. *Cambridge*, 166 Mass. 268, 277 [1896], this court said, 'It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become as to that service the servant of such third party.' " The court followed the common law test set out in *Langevin's Case* and in *Coughlan*: — "[W]hether in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Galloway's Case* held that where an agency engaged in the business of supplying temporary help had supplied a clerk-typist to another company, Sylvania, under an arrangement similar to that in our case and she was injured while on the job, the insurer of Sylvania (to the direction and control of which she was subject), rather than the agency which was her general employer, was liable under the Workmen's Compensation Act.

Continental contends that the same result should be reached in this case despite the subsequent enactment of St. 1969, c. 755, which made specific provisions for situations "where there shall exist with respect to an employee

a general employer and a special employer relationship" and generally places the primary liability on the insurer of the general employer. (See fn. 2, *supra.*) Continental argues that the statute was a response to *Galloway's Case* and should be confined to "so-called employment agency cases." We disagree.

It may well be that legislative concern was precipitated by the particular difficulties created by that case for the labor service industry as well as for employees supplied to uninsured special employers.[3] See Locke, Workmen's Compensation, § 156 (Supp. 1975). But the distinction between "general employer" and "special employer" has been with us since long before the development of the modern labor service industry. It appears in a workmen's compensation context at least as early as *Scribner's Case,* 231 Mass. 132, 135 (1918), in which the court adhered to the common law criteria of control and assent by the employee in imposing liability as between "a special employer as distinguished from his [a "lent" employee's] general employer." The 1969 statute, in minimizing the use of these criteria by imposing primary liability on the general employer, thus addresses broadly the uncertainty and consequent litigation which has resulted from the use of these criteria. See, e.g., *Chisholm's Case,* 238 Mass. 412, 419-421 (1921); *Wall's Case,* 293 Mass. 93 (1935); *Langevin's Case,* 326 Mass. 43, 47-48 (1950); *Keaney's Case,* 341 Mass. 571 (1960); *Sargentelli's Case,* 331 Mass. 193 (1954); *Brooks's Case,* 338 Mass. 692 (1959). Cf. *Sawtelle* v. *Mystic Valley Gas. Co.* 1 Mass. App. Ct. 672, 675-677 (1974). It has been said: "The law that defines or seeks to define the distinction between general and special employers is beset with distinctions so delicate that chaos is the consequence. No lawyer can say with assurance in any given situation when one employment ends and the other begins." Cardozo, A Ministry of Justice, 35 Harv. L. Rev. 113, 121 (1921).

---

[3] *Galloway's Case, supra,* and the 1969 statute antedate the broad compulsory coverage extended by St. 1972, c. 374, § 1 (amending G. L. c. 152, § 1).

The 1969 statute, as indicated by its title (see fn. 2, *supra*), deals in terms of the broad categories of "general employer" and "special employer." There is no such limitation to "a person who for consideration and as the regular course of his business supplies an employee ... to another person," as is found in the Rhode Island statute dealing with this problem. R.I. General Laws, 1956 (1968 Reenactment), § 28-29-2 (d) (inserted by 1960 R.I. Pub. Laws, c. 182, § 1;[4] see 1970 R.I. Pub. Laws, c. 277, § 2). Further, the statute speaks broadly of "*any case* where there shall exist with respect to an employee a general employer and a special employer relationship ..." (emphasis supplied). G. L. c. 152, § 18 (as amended by St. 1969, c. 755, § 2). Similarly, the definition of "employer" in the amended statute includes "both the general employer and the special employer in *any case* where both relationships exist with respect to an employee" (emphasis supplied). G. L. c. 152, § 1(5) (as amended by St. 1969, c. 755, § 1).[5]

Accordingly, the judgment of the Superior Court is affirmed. Costs of this appeal are to be determined under G. L. c. 152, § 11A, by a single justice of this court.

*So ordered.*

---

[4] Long before the burgeoning of the labor service industry, other jurisdictions had addressed the problem of workmen's compensation coverage for loaned employees. E.g., Conn. Gen. Stat. § 31-292 (1975) (inserted by 1931 Conn. Pub. Acts c. 132; see Davis, Workmen's Compensation in Connecticut — The Employment Relation, 4 Conn. L. Rev. 573, 610 [1972]); Cal. Ins. Code § 11663 (Deering 1977) (inserted by 1947 Cal. Stats. c. 1466, § 1) (using the terminology "general employer" and "special employer"); Workmen's Compensation Act, 1906, 6 Edw. VII, c. 58, § 13 (examined and distinguished in *Scribner's Case*, 231 Mass. 132, 135-136 [1918], and *Cayll* v. *Waukesha Gas & Elec. Co.* 172 Wis. 554, 559 [1920], on the ground that the Legislatures in Massachusetts and Wisconsin had chosen to follow the common law rule). See generally, Parse, The General and Special Employer Problem in Workmen's Compensation — A Recommended Solution, 33 Tex. L. Rev. 1058 (1955).

[5] Continental suggests the possibility that there was an agreement that Lane pay the workmen's compensation for Ramsey. (See fn. 2.) From Continental's brief that appears as pure speculation. Our examination of the record indicates that is no more than an afterthought.