444 Mass. 599 (2005)                                          599

The Home Insurance Company *v.* Liberty Mutual Fire Insurance Company.

THE HOME INSURANCE COMPANY & another[1] *vs.* LIBERTY MUTUAL FIRE INSURANCE COMPANY.

Suffolk. May 6, 2005. - July 7, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Workers' compensation insurance, Construction of policy, Coverage. *Workers' Compensation Act,* Coverage. *Consumer Protection Act,* Insurance.

In an insurance coverage action arising from an injury to a leased employee, in which the plaintiff, the insurer of the client company, sought indemnity and reimbursement of defense costs incurred in settling the employee's tort litigation from the defendant, an insurer who had issued a workers' compensation and employers' liability policy to the leasing company, the judge did not err in granting summary judgment in favor of the defendant, where the client company was not a named insured under the plain language of the policy [602-608]; further, as the defendant had no obligation to defend or to indemnify the plaintiff, the plaintiff could not maintain a claim under G. L. c. 93A, § 11, for the defendant's failure to do so [608].

This court declined to award appellate attorney's fees and costs pursuant to Mass. R. A. P. 25, 376 Mass. 949 (1979). [608]

CIVIL ACTION commenced in the Superior Court Department on October 22, 2001.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Erik Lund* (*Joseph P. Crimmins* with him) for the plaintiffs.

*Marc LaCasse* for the defendant.

SPINA, J. This insurance coverage action arises from an injury to a leased employee. The insurance company of a lessee-special employer seeks indemnification and reimbursement of costs for defense from the insurance company of the lessor-general

---

[1]Pure Tech SPP, Inc., assignor.

employer under workers' compensation and employers' liability policies the lessor's insurer issued to the lessor. A judge in the Superior Court granted summary judgment to the lessor's insurer. We transferred the case here on our own motion, and now affirm on different grounds. For the reasons discussed below, we find that under the plain language of the policies the lessee-special employer was not insured. Therefore, no coverage liability existed and the lessee's insurer is not entitled to either indemnification or costs of defense.

1. *Background.* Carmelo Mercado was an employee of Abel Leasing Company, Inc. (Abel), and as such was leased to Pure Tech International, Inc., for employment at its Massachusetts facility, Pure Tech SPP, Inc. (collectively, Pure Tech). Mercado sustained serious injuries related to his employment in August, 1995, while leased to Pure Tech. He filed a workers' compensation claim against Abel and received compensation for his claims through Abel's insurer, Liberty Mutual Fire Insurance Company (Liberty).

In April, 1996, Mercado filed a third-party civil action against Pure Tech, alleging negligence for failure to ensure that the machinery that injured him was functioning in a reasonable and safe manner and for failing to implement policies and procedures that would have prevented the accident. Pure Tech's comprehensive general liability insurer, Home Insurance Company (Home Insurance), defended the action.

At some point prior to trial, Pure Tech had filed a motion for summary judgment asserting the exclusive remedy of workers' compensation defense, but its expert determined that Pure Tech had no better than a thirty per cent chance of success on that motion. Pure Tech's counsel stated the likelihood of success as "less than [fifty per cent] due to the uncertainty in the law of this Commonwealth on the issue and the damaging testimony." He put the risk of a finding of liability if the matter went to a jury at ninety per cent. In light of this, a settlement was reached on or about October 25, 2000, for $850,000. Pure Tech incurred $129,770.29 in defending against the tort claim before settlement was reached. Some of the settlement recovery was used to satisfy a lien Liberty had for reimbursement of the workers' compensation benefits it had paid on behalf of Abel.

On September 29, 2000, over four years after the suit initially was filed, just over two months before the firm trial date of December 4, 2000, and less than one month before the final settlement was reached, Home Insurance sent Liberty a first demand letter "demand[ing] that Liberty Mutual acknowledge its obligations to Pure Tech, assume full responsibility for the defense and indemnification of Pure Tech . . . and control any negotiations to settle the case."[2] Liberty never responded. Pure Tech ultimately assigned to Home Insurance any claims it might have against Liberty for failure to defend and indemnify it. In October, 2001, Home Insurance and Pure Tech (collectively, Home) filed a complaint in Superior Court seeking a declaration as to the obligations and liabilities of Liberty, and also seeking damages arising from the failure to defend and claims alleging violations of the consumer protection act, G. L. c. 93A. With the facts largely undisputed, the parties filed cross motions for summary judgment.

In December, 2003, the motion judge issued summary judgment in favor of Liberty. He declined to determine whether the Liberty policy insured Pure Tech. Instead, he concluded that, even if it did, the policy imposed no duty on Liberty to defend and indemnify against a negligence claim such as this, filed by an injured employee who had not rejected the workers' compensation system. The judge interpreted the employers' liability coverage provided by the policy as "intended to provide coverage in the rare circumstance in which an employee [who] has affirmatively opted out [of the workers' compensation system] brings a tort action for personal injuries." *HDH Corp.* v. *Atlantic Charter Ins. Co.*, 425 Mass. 433, 439 n.11 (1997). Home has appealed.

2. *Standard of review.* The interpretation of the language of the insurance policy naming those whom it insures is a question of law. See *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 394 (2003); *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*,

[2]The parties dispute whether Liberty ever received the demand to defend and indemnify Pure Tech in this action. The motion judge recited the demand and Liberty's failure to respond as facts. This discrepancy does not affect our analysis and is not sufficient on its own to warrant a trial on the merits given our conclusions of law.

419 Mass. 704, 707 (1995). So too is the extent of the coverage provided by the employers' liability provision. "In the absence of an ambiguity, we will 'construe the words of the policy in their usual and ordinary sense.' " *116 Commonwealth Condominium Trust* v. *Aetna Cas. & Sur. Co.*, 433 Mass. 373, 376 (2001), quoting *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998). The mere fact that the parties disagree on the proper construction of policy language does not necessarily establish an ambiguity. *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995).

3. *Discussion.* a. *Claims for defense and indemnification.* The work Mercado did for Pure Tech was done pursuant to an employee leasing agreement. Under the terms of the agreement, while Pure Tech directed his day-to-day activities, Abel retained the rights and obligations of the employer. Abel chose whether to continue Mercado's employment, determined his rate of pay, provided his benefits, paid for his workers' compensation insurance, and was responsible completely for payroll, payroll tax, insurance, and other administrative matters. Home does not contest that Abel was Mercado's employer. Instead, it seeks to assert that Pure Tech also was his employer, functioning as a "special employer" under case law relating to employee leasing arrangements. See *Ramsey's Case*, 5 Mass. App. Ct. 199, 202-204 (1977). Home refers to this as a "dual employers" situation. In addition, Home seeks to focus our attention on understandings and obligations between Pure Tech and Abel with regard to the employee leasing contract.

The action Mercado filed against Pure Tech was the type of negligence claim someone injured in the course of his employment may file against a third-party tortfeasor. Even if Pure Tech functioned as Mercado's special employer, that status did not insulate it from such a claim. See *Lang* v. *Edward J. Lamothe Co.*, 20 Mass. App. Ct. 231, 232 (1985) (special employer of leased employee not liable to pay workers' compensation claim, and therefore not immune from action at law for damages). General Laws c. 152, § 15, the section of the workers' compensation act that concerns third-party claims, does not prohibit such an action or provide Pure Tech with any defense,

and Pure Tech does not argue to the contrary. The only remaining question is whether Pure Tech was insured against Mercado's independent tort claim under any Liberty policy.

Initially after the incident, faced with some uncertainty as to who was the true employer of Mercado, Liberty filed suit against Pure Tech to recover its workers' compensation expenditure. As discovery progressed, Liberty chose to dismiss the complaint. Deposition testimony and contemporaneous notes indicate some concern regarding the relationship between Pure Tech and Abel, whether Pure Tech might succeed in a claim of an exclusive defense under workers' compensation, and an acknowledgment that, if they did not, with Mercado's action in place Liberty's interest in indemnification would be assured. The exact rationale is irrelevant. Home claims Liberty "determined and recognized that Pure Tech was an insured of Liberty," but the dismissal of the Liberty action against Pure Tech, for any number of strategic reasons, does not represent a concession on Liberty's part that Pure Tech in fact was an insured under Abel's policy with Liberty. Although Home cites several documents to substantiate such a concession, including extensive citation to deposition transcripts, no such binding concession appears in the record before us by anyone speaking on behalf of Liberty.

The one document that arguably could bind Liberty in this litigation, the deposition of its designee, is equivocal at best.[3] Statements of Liberty's designee, reciting his understanding of

---

[3]The exchange occurred as follows:

*Q.*: "Now, looking at . . . a complaint that was filed by Liberty's counsel [against Pure Tech], this case was ultimately dismissed; is that correct?"

*A.*: "Yes."

*Q.*: "Do you know why?"

*A.*: "To the best of my knowledge, it appeared that Pure Tech may have been listed on the workers' compensation policy by Abel Leasing."

*Q.*: "In other words, Pure Tech was a named insured under the policy?"

*A.*: "It appeared that they may have been. It was unclear."

*Q.*: "What was unclear about whether or not Pure Tech was a named insured under the policy?"

*A.*: "Well, number one, whether in fact they were. And if so, what was the relationship between Pure Tech and Abel Leasing."

*Q.*: "Did Liberty ultimately make a determination of whether or not Pure

the declarations pages, cannot establish as a matter of law that Pure Tech was an insured under the policies if the policies' clear language indicates otherwise. We must examine the policies themselves, in the context of the regulations, to determine coverage.

The Code of Massachusetts Regulations addresses the responsibility of employee leasing companies to provide workers' compensation insurance to their employees. Section 111 of title 211 was drafted "to ensure that any entity which is defined as an employee leasing company . . . properly obtains workers' compensation coverage for itself and all of its employees leased to another entity, and that premium paid for the coverage for such leased employees is commensurate with the exposure and anticipated claim experience." 211 Code Mass. Regs. § 111.01 (1993). In relevant part, 210 Code Mass. Regs. § 111.04(1) (1993) states:

Tech was a named insured under the policy?"

A.: "I'm not sure about that. I'm only sure that we decided that we would withdraw or have dismissed Liberty's direct action against Pure Tech."

When asked later in the deposition about the two specific policies at issue, the Liberty designee, examining the documents at that time, did state that he thought Pure Tech was an insured:

Q.: "Okay. And looking at the declarations page . . . is Pure Tech a named insured under the policy?"

A.: "According to this document, yes."

Q.: "And is that because Pure Tech is listed under item one, name of insured?"

A.: "Yes."

Q.: "Do you know if Pure Tech would be considered an alternate employer under this policy?"

A.: "No. I'm not sure."

Q.: "And how would you go about finding out if Pure Tech was an alternate employer under this policy?"

A.: "I would have to clarify that issue with Liberty Mutual's underwriting and sales departments."

"  . . .

Q.: "When you look at the second page of the declarations page . . . do you know why Pure Tech is not listed as the named insured?"

A.: "No."

Q.: "Who would you ask to find out?"

A.: "Again, underwriting and/or sales."

444 Mass. 599 (2005)                                605

The Home Insurance Company v. Liberty Mutual Fire Insurance Company.

"It shall be the responsibility of the employee leasing company to purchase and maintain a separate policy providing standard workers' compensation and employers' liability insurance for each client company. . . . Each policy written to cover leased employees shall be issued to the employee leasing company as the named insured. The client company shall be identified thereon by the attachment of an appropriate endorsement indicating that the policy provides coverage for leased employees in accordance with Massachusetts law."

This language leaves no doubt that the insured is to be the leasing company and that the policy is intended to cover leased employees injured in the course of employment at the client company. The regulation does not expressly require the client company to be a named insured. The regulation is silent regarding comprehensive general liability coverage for those entities that choose to lease employees from a leasing company. With this in mind, we now turn to the specific policies at issue here to determine whether they conformed to this regulation and what, if any, additional coverage they may have provided to Pure Tech as the client-lessee.

The original Liberty master Workers Compensation and Employers Liability Policy (exhibit 5) named Abel as the sole insured and listed the insured as located at "2650 Highway #130, Suite D, Cranbury, NJ 08512," Abel's corporate address. The line designating other workplaces where the insured functioned refers to the attached schedules for each client company. The policy provided two kinds of coverage. Part One provided standard workers' compensation coverage, of which Abel availed itself. Part Two, under which Home asserts its claims, provided employers' liability coverage, the relevant language of which is set out in the margin.[4]

In compliance with 211 Code Mass. Regs. § 111.04, for each

---

[4]"A. How This Insurance Applies

"This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

"1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

". . .

of Abel's Massachusetts clients, Liberty issued a separate policy to Abel. The policy issued relevant to Pure Tech states it is "part of a Large Deductible Rating Plan for Abel Leasing Company, Inc. under the master policy" (exhibit 6). The named insured on this second, subsidiary policy was designated as "Abel Leasing Company, Inc. L/C/F [labor company for] Pure Tech of Massachusetts (PUMA)." The insured address was

"B.   We Will Pay

"We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

"The damages we will pay, where recovery is permitted by law, include damages:

"1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

"...

"provided these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

"4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

"C.   Exclusions
"This insurance does not cover:

"1. liability assumed under contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

"...

"D.   We Will Defend

"We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

"We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance."

Section E provided for payment of various costs incurred as part of a claim, proceeding, or suit.

identified as "2650 Hwy. #130, Suite D, Cranbury, NJ 08512." The line designating other workplaces where the insured functions identifies "Springfield: 18 Avocado St., 01104," the location of Pure Tech's Massachusetts operation where Abel employees reported to work.

" 'Named insured' has a clear and explicit meaning. It is the individual or entity who is listed on the declarations page. We need not substitute the definition favored by the plaintiffs to give 'a reasonable meaning to' or explain the provision." *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 78 (1994). Neither of the policies in the record before us named Pure Tech as an insured nor recited Pure Tech's Massachusetts location or corporate address as that of the insured. Nor was any evidence presented of common industry practice or understanding that naming the insured in a manner such as "Abel Leasing Company, Inc. L/C/F Pure Tech of Massachusetts (PUMA)" makes both Abel (the leasing company) and Pure Tech (the client) named insureds. Pure Tech was not insured by these policies. Whatever understanding or confusion to the contrary that may have existed between Abel and Pure Tech does not change this fact as the policy specifically excludes liability assumed under contract. Unlike the motion judge, we need not reach the issue of the extent of coverage provided by Part Two if both Abel and Pure Tech were named insureds. They were not.

For this reason alone, Liberty has no liability to defend Pure Tech nor to indemnify Home for the expenses it incurred in settling the Mercado tort litigation. Although Liberty had a duty to defend its insured, "if any allegations in the . . . complaint were reasonably susceptible of an interpretation that they stated or adumbrated a claim covered by the . . . policy," this liberal defense doctrine only applies to those who are actually insured. *Liquor Liab. Joint Underwriting Ass'n of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 319-320 (1995). For the claims brought by Mercado, it appears Home was liable as Pure Tech's comprehensive general liability carrier, although we draw no firm conclusions in that regard on this record, as we do not have that policy before us. If Pure Tech wanted something different from its relationship with Abel, it was responsible to

secure it. If Abel promised more than it delivered, Pure Tech's claim does not lie with Liberty. The entry of judgment for Liberty on these claims was appropriate as a matter of law.

b. *Claims under G. L. c. 93A, § 11.* Because we have concluded Pure Tech was not entitled to defense or indemnification under Abel's policy with Liberty, Home's assertion of a G. L. c. 93A, § 11, claim against Liberty must fail. An insurer does not commit a violation of G. L. c. 93A when it rightfully declines to defend a claim that is not covered by its policy. See *Rischitelli* v. *Safety Ins. Co.,* 423 Mass. 703, 704 (1996).

c. *Liberty's claim for appellate attorney's fees and costs.* Rule 25 of the Massachusetts Rules of Appellate Procedure, as appearing in 376 Mass. 949 (1979), provides: "If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee, and such interest on the amount of the judgment as may be allowed by law." Liberty claims the appeal by Home is frivolous and therefore an award of appellate attorney's fees and costs under this rule is warranted. Given Liberty's own apparent uncertainty at times regarding whether Pure Tech was an insured under these policies, we believe it was not unreasonable for Home to pursue this appeal with close to $1 million in expenditures at stake. In our discretion, therefore, we deny Liberty's claim for appellate attorney's fees and costs.

4. *Conclusion.* For the reasons discussed above, we affirm on different grounds the decision of the Superior Court granting summary judgment to Liberty Mutual Fire Insurance Company on all claims brought by The Home Insurance Company and Pure Tech SPP, Inc., in this matter. We deny Liberty's request for appellate attorney's fees and costs.

*Judgment affirmed.*